IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OPENPITTSBURGH.ORG, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | No. 2:16-cv-01075-MRH |
| v. | : | |
| | : | |
| MARK WOLOSIK, et al., | : | |
| | : | *Filed Electronically* |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPORT OF EMERGENCY TEMPORARY RESTRAINING ORDER Of CHALLENGED IN-STATE WITNESS AND VOTER REGISTRATION REQUEMENTS TO CIRCULATE REFERENDUM PETITIONS**

**INTRODUCTION**

Plaintiffs respectfully submit this brief in support of their emergency motion for a temporary restraining order seeking to immediately enjoin defendants from: 1) enforcing Pennsylvania's in-state residency requirement prohibiting out-of-state circulators from circulating referendum petitions without being accompanied by an in-state resident who must execute defendants' "Affidavit of Circulator" on each referendum petition page for the 2016 general election found at 53 Pa.C.S.A. § 2943(a) and 25 P.S. § 2869; and 2) enforcing the additional requirement that only a registered Pennsylvania resident may circulate and execute the "Affidavit of Circulator" of referendum petitions.

Plaintiffs require the emergency injunctive relief requested because plaintiff OpenPittsburgh.Org would like to expand their team of petition circulators by hiring additional professional out-of-state circulators and unregistered Pennsylvania residents to help them to secure the required number of valid signatures during the final weekend permitted to circulate referendum petitions before they must be filed on August 9th. Likewise, plaintiff Jake Witmer, a resident of Pennsylvania, employed by Benezet Consulting – an out-of-state petition circulation

1

firm, will be able to circulate plaintiff OpenPittsburgh.Org's referendum petitions if his out-of-state circulation firm is permitted to circulate referendum petitions in Pennsylvania.

## ARGUMENT

To gain access to Pittsburgh's 2016 general election ballot, plaintiffs are required to submit referendum petitions containing 7,582 valid signatures of Pennsylvania electors.  Compl. ¶ 25-26.  In order to gather enough signatures before the August 9th deadline, plaintiff need to be able to use every professional and volunteer willing to circulate its referendum petitions, both registered and unregistered to vote and no matter where they reside within the United States.  There are no set of facts under which the challenged provisions of 53 Pa.C.S.A. § 2943(a) and 25 P.S. § 2869, and defendants' enforcement of those provisions, remain constitutional consistent with the recent evolution and application of First Amendment jurisprudence, as more fully set forth below.

A plaintiff is entitled to an injunction if he can show: (1) a reasonable probability of success on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) granting the injunction will not result in even greater harm to the nonmoving defendants; and, (4) that an injunction is in the public interest." See McTernan v. City of York, 577 F.3d 521, 525 (3rd Cir. 2009); Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7 (2008).

When a party requests preliminary injunctive relief on the basis of the potential violation of the First Amendment, a showing of a reasonable probability of success on the merits often will be the determinative factor.  With respect to the irreparable injury prong, for example, it is well-settled that the "loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

Likewise, the determination of where the public interest lies also is dependent on a determination of the "reasonable probability of success" prong because "it is always in the public interest to prevent the violation of a party's constitutional rights." <u>Gannett Co., Inc. v. DePasquale</u>, 443 U.S. 368, 383 (1979).  Furthermore upon a showing that plaintiffs have a reasonable probability of success on the merits of their First Amendment claims, defendants, as the non-moving parties, cannot assert and/or ***prove*** any interest that would be subject to greater injury than the loss of plaintiffs' constitutional rights, because the analysis of defendants' interests are baked into the initial analysis of the merits of the claims as to whether the challenged provisions alleged to violate First Amendment rights narrowly advance a state interest sufficient to permit the impairment of plaintiffs' First Amendment rights in the first instance.  Plaintiffs satisfy these four requirements as to each request for emergency injunctive relief and are entitled to the requested emergency temporary restraining order.

**A.     Plaintiffs Can Demonstrate a Strong Likelihood of Success on the Merits as the In-State Witness and Voter Registration Requirements of 53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869, and Defendants Enforcement of These Provisions, Are Unconstitutional on Their Face.**

The in-state witness and voter registration requirements of 53 Pa.C.S.A. § 2943(a) and 25 P.S. § 2869 require that the "Affidavit of Circulator" (hereinafter the "Affidavit") on each of plaintiffs' referendum petition papers must be executed by a resident of the Commonwealth of Pennsylvania who is also a registered voter of the Commonwealth. The Affidavit must be completed for each page of the petition paper before plaintiffs may file them with defendants. The Affidavit requires that the "qualified elector" – who must be a resident and registered voter of the Commonwealth of Pennsylvania –  must attest that he/she has personal knowledge as to the validity and circumstances of the signatures recorded on the nomination paper for which the Affidavit is executed.  Accordingly, the challenged provisions of 53 Pa.C.S.A. § 2943(a) and  25

P.S. § 2869 prohibits out-of-state circulators from circulating referendum petitions out of the sight lines of an in-state "qualified elector" and resident of the Commonwealth of Pennsylvania – rendering any assistance of out-of-state circulators to be merely duplicative of in-state circulator efforts.  The challenged provision flatly prohibits an out-of-state circulator from validly circulating plaintiff's nomination papers in any geographic location for which there is no in-state registered circulator able and willing to partner with the out-of-state circulator.  Furthermore, the challenged provision flatly limits out-of-state and/or unregistered Pennsylvania circulator participation to the precise time and convenience of an in-state "qualified elector."  In *Morrill v. Weaver*, 224 F.Supp.2d 882 (2002), the Commonwealth conceded that although the in-state witness who executes the Affidavit "does not have to personally gather the signatures, . . . he must be present when they are made." *Morrill*, 224 F.Supp.2d at 898.

     In evaluating ballot access cases, courts must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999).  The Supreme Court has twice considered statutes that restrict who may circulate election petitions in support of ballot access, and has twice invalidated the restriction.   In *Meyer v. Grant*, 486 U.S. 414 (1988), the Court struck down Colorado's prohibition on paid petition circulators.  Holding that the restriction was "a limitation on political expression subject to exacting scrutiny" the Court reasoned that the state had failed to justify the burden on advocates' free speech rights. *Meyer*, 486 U.S. at 420. In *Buckley*, the Court invalidated a requirement that petition circulators be registered voters of the state, holding that the "requirement cuts down the number of message carriers in the ballot-access arena without impelling cause." *Buckley*, 525 U.S. at 197.  Accordingly, the voter registration requirement of 53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869 is flatly black letter law

4

unconstitutional under existing U.S. Supreme Court precedent, and the requested TRO should be immediately granted.

Although *Buckley* expressly reserved the question of whether residency requirements like the one at issue in this action would be unconstitutional, *Buckley*, 525 U.S. at 197, every federal court to address in-state circulator restriction, where the circulators are willing to place themselves under the jurisdiction of the state in which they want to circulate election petitions has expressly relied on *Buckley* and *Meyer* to hold such requirements unconstitutional in the context of both ballot initiative and candidacy petitions.  See *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011) (invalidating state residency requirement for circulators of candidacy and ballot initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (invalidating state residency requirement for circulators of presidential candidacy petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (same); *Daien v. Ysursa*, 711 F.Supp.2d 1215 (D. Idaho 2010) (same); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (invalidating residency requirement for circulators of petition for congressional candidacy petitions); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013) (invalidating state residency requirement for circulators of candidacy petitions), aff'g 881 F.Supp.2d 719 (E.D. Va. 2012) cert. denied, 571 U.S. ____, 134 S. Ct. 681 (Dec. 2, 2013).

Just last year, Judge Dalzell of the United States District Court for the Eastern District of Pennsylvania preliminarily and permanently enjoined enforcement of the cognate in-state witness restriction imposed upon the circulation of nomination papers pursuant to 25 P.S. 2911(d), as applied to candidates for the Green and Libertarian parties of Pennsylvania.  *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723 (E.D. Pa. 2015).  Most recently, Judge Hall of the United States District Court for the District of Connecticut enjoined the in-state witness

restriction on the circulation of nomination petitions for candidates for both major and minor political parties.  <u>Wilmoth v. Merrill</u>, 3:16-cv-0223 (D. Conn., March 1, 2016); <u>Libertarian Party of Connecticut v. Merrill</u>, 3:15-cv-01851 (D. Conn., January 27, 2016).

As in the cases cited above, the state residency requirement here imposes a severe burden on plaintiffs' First Amendment rights without being narrowly tailored to serve a compelling governmental interest.

> **1.    53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869  Impose a Severe Burden on Political Speech and Must be Reviewed Under a Strict Scrutiny Standard.**

In evaluating the constitutionality of an election law, "the rigorousness of [the court's] inquiry . . . depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." <u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992).  When constitutional rights "are subjected to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance."  Id.  (internal quotation marks and citation omitted).  Based on the Supreme Court's decision in <u>Buckley</u>, a restriction that drastically reduces the number of persons available to circulate petitions imposes a severe burden on First Amendment speech because it reduces or limits the ability to associate with potential supports.  Accordingly, strict scrutiny applies to judicial review of both the voter registration and in-state witness restriction because of the vast number of persons prohibited from circulating referendum petitions in the Commonwealth of Pennsylvania – over 300 million United States residents are prohibited by the challenges statutes from circulating referendum petition in Pennsylvania, and an addition number of unregistered Pennsylvania residents are also prohibited from freely circulating referendum petitions a number which is constitutes a *per se* and unchallengeable severe restriction on rights guaranteed to plaintiffs' under the First and Fourteenth Amendments to the United States Constitution.

First and foremost, the United States Supreme Court expressly applied strict scrutiny on voter registration requirements imposed on the circulation of referendum petitions.  That, frankly is the end of the analysis – plaintiffs must prevail on their instant motion for emergency temporary restraining order on defendants as they will (not just likely) prevail on the merits. <u>Buckley</u>, 525 U.S. at 197.

With respect to the challenged in-state witness restriction, Judge Dalzell in ruling Pennsylvania's in-state witness restriction invalid for the circulation of election petitions for candidates of political bodies in <u>Green Party of Pennsylvania</u>, explained that:

> "Our Court of Appeals has not considered the validity of the In-State Witness requirement.  In our July 31, 2014 Order we relied on the reasoning of the Fourth Circuit in <u>Judd</u> and held such residentcy requirements unconstitutional.  We do so again here.  We apply the strict scrutiny standard because the character and magnitude of the asserted injury outweighs the Commonwealth's interests as a justification for the burden it imposes.  The Commonwealth's residency requirement is not narrowly tailored to advance a state interest of compelling importance.  'As the law has developed…, a consensus has emerged that petitioning restrictions like the one at issue here are subject to strict scrutiny analysis.'"

<u>Green Party of Pennsylvania</u>,  89 F.Supp.3d at 740 *citing* <u>Judd</u>, 718 F.3d at 316-17.

Nearly every court to consider the constitutionality of an in-state residency requirement for election petition circulation has subjected the requirements to strict scrutiny preciously because of the number of persons excluded from circulating referendum and election petitions by the challenged statutes .  See, e.g., <u>Citizens in Charge v. Gale</u>, 810 F.Supp.2d at 925; <u>Nader v. Blackwell</u>, 545 F.3d at 475; <u>Nader v. Brewer</u>, 531 F.3d at 1036; <u>Daien</u>, 711 F.Supp.2d at 1231 ; <u>Krislov</u>, 226 F.3d at 862; <u>Libertarian Party of Virginia v. Judd</u>, 718 F.3d at 317.  As in these cases, the in-state witness provision at issue in the present action undoubtedly places serious burdens on the First Amendment rights of the plaintiffs.  Indeed, it burdens the free speech rights of nearly everyone who participates, or wishes to participate, in the Commonwealth's process for

establishing who will appear on its primary election ballot, from which voters will select candidates for the general election ballot who they will ultimately elevate to important public office(s). The scope and severity of these burdens require the Court to evaluate the challenged statutory provision under strict scrutiny.

### a. The Burden on Proponents of Referendum & Petition Circulation.

In *Meyer*, the Court explained that the circulation of a ballot initiative petition involves "the liberty to discuss publicly and truthfully all matters of public concern" at the core of the First Amendment. *Meyer*, 486 U.S. at 414 (citation omitted). Such discussion is inherent in the petition process:

> Although a petition circulator may not have to persuade signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it.

*Meyer*, 486 U.S. at 421.

Courts have recognized that provisions virtually identical to the challenged law reduce the number of eligible circulators available to circulate plaintiffs' referendum petitions undermining candidate speech in two ways:

> First, it limits the number of voices who will convey [the] message and the hours they can speak and, limits the size of the audience they can reach. Second, it makes it less likely that [the referendum question] will garner the number of signatures necessary to place the matter on the ballot….

*Id*. at 422-23. Additionally, the challenged provision "burdens [the] right to associate with a class of circulators." *Krislov*, 226 F.3d at 860:

> Although the [Pennsylvania] provision does not go so far as to specifically prohibit [referendum sponsors] from associating with individuals who are not residents of [Pennsylvania] . . ., it still substantially burdens this right of association by preventing the [referendum sponsors] from using signatures gathered by these circulators [without being witnessed by Pennsylvania residents] . . . . By doing so, the law inhibits the expressive

8

utility of associating with these individuals because these potential circulators cannot [freely] invite voters [and potential voters] to sign [the referendum] petitions . . . .

*Id*. at 861 (bracketed text inserted into the quote as necessary to conform to Pennsylvania facts).

As in *Meyer* and *Buckley*, the Pennsylvania residency requirement to execute the Affidavit on each referendum petition paper drastically reduces the number of persons, both volunteer and paid, available to circulate petitions," *Buckley*, 525 at 193.  In doing so, it severely burdens this important means of communication for referendum sponsors and limits the ability of plaintiff OpenPittsburgh.Org to associate with many potential supporters.

### b. The Burden on Circulators.

Because those seeking to circulate nomination petitions in the Commonwealth of Pennsylvania, such as plaintiff Witmer, are the ones most directly engaging in the effort to persuade voters and potential voters of the value of a particular referendum question, it follows that the in-state residency and voter registration requirement to execute the Affidavit on referendum petitions also gravely diminishes the free speech and association rights of out-of-state residents and unregistered Pennsylvania residents who wish to circulate referendum petitions in Pennsylvania.  In fact, many of the cases that have considered the constitutionality of in-state residency requirements have been filed and won by the circulators themselves.  *See e.g.,Daien*, 711 F.Supp.2d  1215,  *Nader v. Brewer*, 531 F.3d 1028, *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723.  *Wilmoth v. Merrill*, 3:16-cv-0223 (D. Conn. March 1, 2016) (granting emergency temporary restraining Order).

The challenged statutory provisions impact the free speech rights of out-of-state circulators in a number of ways.  First, it deprives them of the opportunity to persuade voters and potential voters in Pennsylvania of the viability and/or utility of the referendum question sought to be placed on the general election ballot.  The difficulty and time consuming process of

matching a willing out-of-state circulator with a willing in-state registered circulator to circulate referendum petitions at a time and place convenient to each is a time-consuming organizational difficulty to plaintiffs with limited organizational infrastructure which presents an added impairment to the use of willing out-of-state circulators.

Finally, the in-state residency and voter registration requirement burdens the circulators' right to associate with the voters of Pennsylvania, at the time and place of the circulators choosing. *See*, Lerman v. Board of Education, 232 F.3d 135, 143 (2nd Cir. 2000) (noting a circulator's right "to engage in interactive political speech and expressive political association across electoral district boundaries"). In sum, the free speech rights of out-of-state election petition circulators are severely burdened by Pennsylvania's in-state residency and voter registration requirements to execute the Affidavit on each of plaintiffs' nomination papers.

> c. **The Burden on Potential Signers.**

Not only are those disseminating information burdened by Pennsylvania's in-state and voter registration requirement for circulators of referendum petitions, those who would receive the information, the residents of the Commonwealth and, in the instant case the residents of Pittsburgh, are burdened as well. "[T]he Constitution protects the right to receive information and ideas." Stanley v. Georgia, 394 U.S. 557 (1969). "This right is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution." Board of Educ., Island Trees Union Free School Dist, No. 26 v. Pico, 457 U.S. 853, 867 (1982). Depriving Pennsylvania residents of speech by out-of-state petition circulators educating them potential referendum questions the in-state residency restriction burdens voters and potential voters' First Amendment rights by limiting their choice on the ballot. "By limiting the choices

available to voters, the State impairs the voters' ability to express their political preference." <u>Illinois State Board of Elections v. Socialist Workers Party</u>, 440 U.S. 173, 184 (1979).

### 2. Defendants Cannot Save the In-State Witness or Voter Registration Requirements from Strict Scrutiny Analysis.

Because the in-state witness and voter registration requirements on executing the Affidavit imposes a severe burden on First Amendment rights, strict scrutiny applies to this Court's review of the challenged statute. Once this Court determines political speech has been burdened and that strict scrutiny must be applied; it is presumed that the law, or regulation, or policy is unconstitutional. <u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992). The government then has the burden to **prove** that the challenged law is constitutional. <u>Federal Election Com'n v. Wisconsin Right to Life, Inc.</u>, 551 U.S. 449, 450-51 (2007). To withstand strict scrutiny, the government must prove that the law <u>is necessary</u> to achieve a <u>compelling governmental interest</u>. *Id*. If this is **proved**, the state must then demonstrate that the law is also narrowly tailored to achieve the asserted interest. *Id*.

In order to meet its burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (citing *Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1455 (1985)). In other words, the government must factually **prove** the existence of the evil and that the asserted interest is necessary and narrowly tailored to remedy that evil. Under the requirement that any policy must be narrowly tailored to advance the asserted compelling governmental interest, defendants cannot forego a policy which is clearly less burdensome on free speech and association rights in favor of the policy challenged in this action.

### a.     The In-State Witness and Voter Registration Requirements Fail to Advance a Compelling Governmental Interest.

In this case, defendants cannot meet their burden of proof, because there is simply no legitimate state interest to be protected by prohibiting out-of-state and/or unregistered circulators from executing the Affidavit on each nomination petition.  Therefore, plaintiffs have shown a reasonable probability of success on the merits and is entitled to the requested injunction against defendants from enforcing the in-state witness restriction of 53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869  against plaintiffs.

While it is well established that states have a compelling interest in protecting the validity of their electoral process, in Pennsylvania that interest is mainly protected by 25 P.S. § 2937 which provides for objections to be filed in state court triggering judicial review of all challenged signatures of the referendum petition.  *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (explaining that states have a compelling governmental interest in protecting the validity of their electoral process). In Pennsylvania, once plaintiffs have filed their referendum petitions with defendants, any elector may file a challenge to the petition.

Therefore, the Commonwealth of Pennsylvania has established a rigorous procedure to determine the validity of each signature recorded on referendum petitions sufficient to render the Affidavit a nullity with respect to its utility to advance any compelling governmental interest in making sure that each nomination petition has been validly filed and is free from any fraud.

The United State District Court for the Eastern District of Virginia in *Libertarian Party of Virginia v. Judd*, expressed open skepticism that the signature of an affiant on an election petition affidavit of the kind imposed by Pennsylvania in the Affidavit achieves any compelling governmental interest noting that "[a]s we have recognized 'the critical signature on the petition is not that of the circulator, but that of the voter' who is necessarily subject to the state's

12

subpoena power by virtue of residency" for purposes of policing election petition fraud.  *Id.* at n.5 (*quoting* <u>Perry v. Judd</u>, 2012 WL 113865, at 10).  Accordingly, defendants cannot prove that the distinction between an in-state and out-of-state circulator for purposes of the in-state residency requirement to execute the Affidavit is necessary to advance any compelling governmental interest.  The same analysis must as be applied to the challenged voter registration requirement.

### b. The In-State Witness and Voter Registration Requirements are not Narrowly Tailored to Advance a Compelling Governmental Interest.

To the extent that the in-state witness and voter registration requirements serve any compelling governmental interest, the restriction is not narrowly tailored to advance that interest. Defendants must show that the challenged restrictions are no broader in scope or burdensome than necessary to achieve its purpose.  <u>Brewer</u>, 531 F.3d at 1037; <u>Krislov</u>, 226 F.3d at 863. Defendants cannot show that allowing non-residents of the Commonwealth or unregistered residents of Pennsylvania to circulate referendum petitions free from the supervision of an in-state registered resident would increase the instances of fraud.  To establish the need to regulate non-resident circulators, defendants must prove that non-residents and/or unregistered voters of Pennsylvania are more likely to commit fraud then residents.  However, multiple federal courts have rejected the idea that a non-resident circulators are inherently less honest.  *See, e.g.*, <u>Meyer</u>, 486 U.S. at 426; <u>Brewer</u>, 531 F.3d at 1037; <u>Yes on Term Limits v. Savage</u>, 550 F.3d 1023, 1029 (10th Cir. 2008). No federal court has ever accepted that a circulator's voter registration status implicates suspicion of honesty.

To the extent that defendants allege that the in-state residency requirement is necessary to make sure that circulators are within the state's subpoena power, the courts in <u>Brewer</u>, <u>Yes on Term Limits</u>, <u>Chandler</u>, <u>Citizens in Charge</u>, <u>Perry</u>, <u>Libertarian Party of Virginia</u>, <u>Green Party of</u>

13

*Pennsylvania*, *Libertarian Party of Connecticut*, and *Wilmoth* have all ruled that such an interest is not narrowly tailored, as states could require circulators to submit to their subpoena power before becoming a circulator. Plaintiff Witmer and has stated his willingness to submit to the Commonwealth's jurisdiction to freely circulate nomination papers. *See*, Compl. ¶ 41-42. Further, defendants can present no evidence that Pennsylvania has been unable to prosecute any fraudulent circulators because they were not residents of the Commonwealth. Accordingly, for all the reasons stated above, the In-State Witness Requirement of 25 P.S. § 2869 violates the First and Fourteenth Amendments to the United States Constitution and plaintiffs are entitled to the emergency preliminary injunction requested.

**B.     Irreparable Harm**

"The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elron v. Burns*, 427 U.S. 347, 353 (1976). Thus, in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008). Absent an emergency preliminary injunction/temporary restraining order, plaintiffs will continue to suffer irreparable deprivation of their constitutional rights under the First and Fourteenth Amendments.

**C.     The Balance of Equities**

As discussed above, the plaintiffs will suffer irreparable harm if defendants are permitted to continue to enforce their interpretation of the challenged provisions made part of this emergency motion for injunctive relief. On the other hand, defendants can claim no harm resulting from the issuance of a preliminary injunction. Accordingly, the balance of equities favors plaintiffs.

**D.**     **The Public Interest**

The health and well-being of a democracy depends upon choice at the ballot box. Enjoining defendants enforcement and interpretation of the challenged provisions of 53 Pa.C.S.A. § 2943(a) and 25 P.S. § 2869 will result is greater citizen participation in the control of their government via the referendum ballot. Furthermore, the public interest is served by defendants, as agents of the Commonwealth, acting within the limits and protections afforded by the First and Fourteenth Amendments. Therefore, the public interest will be strongly served by this Court issuing the requested injunction.

## CONCLUSION

Because the movants will likely succeed on the merits and suffer irreparable harm if the injunction does not issue, and because the balance of harms and impact on the public interest favor issuance of the requested emergency preliminary injunction, this Court should grant plaintiffs' instant motion.

Respectfully submitted,

Dated: August 1, 2016           _____/s/ *Paul A. Rossi*_____
Paul A. Rossi, Esq.
PA I.D. 84947
*Admitted Pro Hac Vice*
IMPG Advocates
873 East Baltimore Pike, Suite #705
Kennett Square, PA  19348
(717) 961-8978
Paul-Rossi@comcast.net

Attorney for Plaintiffs