IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPENPITTSBURGH.ORG and TRENTON POOL, | }<br>} No. 2:16-cv-01075-MRH<br>} |
| Plaintiffs, | }<br>} Judge Hornak |
| vs. | }<br>} |
| KATHRYN BOOCKVAR, in her official capacity as the acting Secretary of the Commonwealth of Pennsylvania; DAVID VOYE, in his official capacity as Manager of the Allegheny County Division of Elections; KATHRYN M. HENS-GRECO, in her official capacity as an interim Member of the Allegheny County Board of Elections; THOMAS BAKER, in his official capacity as an interim Member of the Allegheny Board of Elections and ROBERT PALMOSINA, in his official capacity as an interim Member of the Allegheny Board of Elections, | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} |
| Defendants. | } *Electronically Filed.*<br>} |

**BRIEF IN SUPPORT OF SECRETARY BOOCKVAR'S
MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**

**I. STATEMENT OF THE CASE**

Plaintiffs first initiated this constitutional challenge to certain provisions in Pennsylvania's Home Rule and Optional Plans Law, which also implicate Pennsylvania's Election Code, by filing a Complaint on July 22, 2015 (Doc. # 1). Initially named as defendants were several local county election officials and Kathleen Kane, in her then official capacity as the Attorney General of the Commonwealth of Pennsylvania.

On August 1, 2016, Plaintiffs filed two respective motions for injunctive relief with supporting briefs. See (Docs. # 10-11, 17, 20); the first was entitled *Emergency Motion for Temporary Restraining Order Enjoining Defendants from Enforcing In-State Witness and Registered Voter Requirement for Referendum Petition Circulators* (Doc. # 10), and the second was entitled *Emergency Motion for Temporary Restraining Order Enjoining Defendants from*

*Requiring Notarized Affidavit of Circulator for Referendum Petitions and that only Registered Electors may Validly Sign Plaintiff OpenPittsburgh.Org's Referendum Petitions* (Doc. #11).

Plaintiffs then filed an Amended Complaint (Doc. # 15) on August 2, 2016, which added then Secretary of the Commonwealth Pedro Cortés as a defendant, added allegations regarding the Plaintiffs' stated intent to pursue certain First Amendment activities at issue in the future, and modified the requested relief sought from the Court.

Cortés and Kane were subsequently dismissed as parties by the Plaintiffs, but pursuant to Fed. R.Civ. P. 5.1 and 28 U.S.C. § 2403, the Attorney General of the Commonwealth of Pennsylvania was "permitted 'to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.'"  ORDER (Doc. # 42), August 9, 2016, at 2-3.  By this same order, preliminary relief was entered by the Court on August 9, 2016, granting Plaintiffs' motions in part and denying them in part.  See ORDER (Doc. # 42), August 9, 2016.

This matter was subsequently stayed and administratively closed.  See ORDER (Doc. # 56), September 30, 2016.  On January 11, 2019, Plaintiff OPENPITTSBURGH.ORG filed a Motion to Lift Stay (Doc. # 58).  The stay was eventually lifted and Plaintiffs were directed to file an amended complaint.  See ORDER APPROVING Proposed Order (Doc. # 71), April 2, 2019, and ORDER GRANTING Motion for Leave to File Second Amended Complaint (Doc. # 73).  Plaintiffs thereafter filed an Amended Complaint (Doc. # 74) on May 6, 2019.

This action was brought pursuant to 42 U.S.C. § 1983 and is directed against a number of government and election officials from Allegheny County, Pennsylvania ("the County Defendants"), as well as against the Acting Secretary of the Commonwealth, Kathryn Boockvar ("Secretary Boockvar").  Plaintiffs unilaterally added Secretary Boockvar anew in the Amended

Complaint without service of summons or seeking leave of court. As noted, Secretary Boockvar's predecessor had been dismissed from this case.[1] All defendants have been sued in their official capacity only. Secretary Boockvar now moves to be dismissed as a party in this action because she is not a proper party. She has no involvement in the electoral process being challenged, no role in the enforcement of the challenged statutes in the context of the present case, and –most critically– no power or authority to provide the relief requested by Plaintiffs. Therefore, Secretary Boockvar is entitled to be dismissed as a party to this action.

## II. STANDARD OF REVIEW

This Court has succinctly set forth the appropriate standard for consideration of a motion to dismiss under Fed. R.Civ. P. 12(b)(6) as follows:

> To survive a motion to dismiss under Fed. R.Civ. P. 12(b)(6), a complaint must allege 'enough facts to state a claim for relief that is plausible on its face.' Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). 'The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In short, a motion to dismiss should be granted only if a party does not allege facts which could, if established at trial, entitle him to relief. See Fowler, 578 F.3d at 211.

Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Service, 938 F.Supp.2d 555, 560-561 (W.D.Pa. 2013). See also EQT Production Co. v. Terra Services, LLC, 2016 WL 1435448, at *3-*4 (W.D.Pa. 2016); Wardell v. City of Erie, 2015 WL 6134014, at *4-*5 (W.D.Pa. 2015).

As further explained by this Court,

---

[1] Accordingly, unlike the County Defendants, for purposes of this litigation Secretary Boockvar is not a successor to former Secretary Cortés. See Hafer v. Melo, 502 U.S. 21, 25 (1991)("when officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation")(citing, inter alia, Fed. R.Civ. P. 25(d)(1).

> In deciding a motion to dismiss, the court is not opining upon whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). 'Factual allegations must be enough to raise a right to relief above the speculative level' and 'sufficient to state a claim for relief that is plausible on its face.' Id. 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).
>
> Our Court of Appeals has instructed that 'a court reviewing the sufficiency of a complaint must take three steps,' Connelly v. Lane Construction Corp., 809 F.3d 780, 786–87 (3d Cir. 2016), explaining:
>
>> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011)("Mere restatements of the elements of a claim are not entitled to the assumption of truth" (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.
>
> Connelly, 809 F.3d at 786-87. 'Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. A plaintiff must set forth 'sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence' of the elements of the claim for relief. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017). See also Connelly, 809 F.3d at 789.

Caristo v. Blairsville-Saltsburg School District, 370 F.Supp.3d 554, 560-561 (W.D.Pa. 2019).

### III.  ARGUMENT

**A. The Amended Complaint should be dismissed because it presents new claims unrelated to the previous claims raised in this action.**

Initially, the instant Amended Complaint should be dismissed because it raises new claims regarding some future 2020 ballot measure wholly unrelated to the claims originally asserted in this action in connection with a 2016 ballot measure.  The initial complaint and amended complaint in this action challenged several rules regarding signature collection for placing referenda on the ballot.  See (Docs. # 1, 15).  However, these challenges arose in the context of an initiative for the 2016 general election, which has now run its course.  While Plaintiffs once again seek to challenge some of these same rules, they do so now in the context of a proposed –but unarticulated– initiative for the 2020 general election.  Under these circumstances, Secretary Boockvar believes that this should be done in the form of a new case.

Although Fed. R.Civ. P. 15 allows for liberal amendment of complaints, see, e.g., Laneve v. Latrobe Steel Co., 2015 WL 4911824, *2 (W.D.Pa. 2015), the instant amendment does not appear to satisfy the requirements of Fed. R.Civ. P. 15(c)(1) for relation back of amendments.  Indeed, while Plaintiffs indicate that they are asserting some of the same challenges they raised in connection with the 2016 election ballot, the present claims do not relate back to the 2016 initiative but instead derive from some entirely new, future initiative sought to be placed on the 2020 election ballot.  See, e.g., Amended Complaint (Doc. # 74), at ¶ 24 ("OpenPittsburgh.Org intends to circulate referendum petitions to place a referendum question on the 2020 Allegheny County general election ballot to amend the Allegheny County Home Rule Charter").  Under

such circumstances, such claims should be the subject of an entirely new action. Thus, the Amended Complaint (Doc. # 74) should be dismissed.[2]

> **B. Secretary Boockvar is entitled to be dismissed as a party in this action because she plays no role and has no involvement in the electoral process at issue. By law, this process is implemented and managed by the local county defendants, with no oversight or review by Secretary Boockvar.**

Instantly, Plaintiff OpenPittsburgh.org has identified itself as "an unincorporated grass-roots political organization that intends circulate referendum petitions authorized to be circulated under the Law to place a referendum on the 2020 Pittsburgh general election ballot seeking to amend the Allegheny County Home Rule Charter changing the composition and qualification of members who may serve on the Allegheny County Board of Elections." See Amended Complaint (Doc. # 74), at ¶ 12. See also OpenPittsburgh.org (website). OpenPittsburgh.org is now joined in this action by Trenton Pool ("Pool"), described in the Amended Complaint as "a professional circulator of election and referendum petitions" who "frequently works on election projects in the Commonwealth of Pennsylvania." See Amended Complaint (Doc. # 74), at ¶ 17.

OpenPittsburgh.org has filed another Amended Complaint, which now seeks to enjoin the Defendants from enforcing specific provisions of the Home Rule and Optional Plans Law and, by reference therein, of Pennsylvania's Election Code, which it believes are unconstitutionally hampering its efforts in collecting a sufficient number of valid signatures to have a referendum question placed on the ballot in a 2020 election. See Amended Complaint (Doc. # 74), at ¶¶ 59-110. The statutes in question are challenged both facially and as applied. Id.

---

[2] The County Defendants have also filed a motion to dismiss, see (Docs. # 75-76). Secretary Boockvar joins in the arguments on Plaintiffs' lack of standing asserted by the County Defendants at Section 1 of the County Defendants' Brief in Support, see (Doc. # 76), at 8-12, as if set forth in full herein.

*1. The legal framework being challenged.*

The critical statutes at issue are found in Pennsylvania's Home Rule and Optional Plans Law ("the Law")(53 Pa. C.S. §§ 2901 *et seq.*).  Initially, as explained by the Commonwealth Court of Pennsylvania,

> [t]o allow local municipalities flexibility in the organization and operation of municipalities, Article 9, Section 31 of the Pennsylvania Constitution mandated that the General Assembly provide for the adoption of optional plans of government for all municipalities in the Commonwealth.  Carrying out that mandate, as well as the mandate contained in Article 9, Section 22 regarding Home Rule, the General Assembly enacted the Home Rule and Optional Plans Law, Act of April 13, 1972, No. 62, §§ 101-1309, as amended, 53 P.S. § 1-101–§ 1-1309.  A municipality desiring to make a change in its form of government, besides having the right to draft its own Home Rule Charter, had the choice of choosing one of the Optional Plans that the General Assembly provided.

<u>City Council of City of Hazleton v. City of Hazleton</u>, 578 A.2d 580, 584 (Pa. Cmwlth.1990), *aff'd*, 600 A.2d 191 (Pa. 1992).

Commensurate with the ability to enact a home rule charter or other optional plan, the General Assembly also provided a process for amending such municipal charters and plans once enacted.  Specifically, Section 2942 provides that

> [a] referendum on the question of amendment of a home rule charter or an optional plan of government may be initiated by petition of the electors or such a referendum may be initiated by an ordinance of the governing body.  A proposal for amendment of an optional plan shall be limited to the additional options provided for in section 2924 (relating to specificity of recommendations).

53 Pa. C.S. § 2942 (Initiation of amendment by electors or council).

Section 2943 then sets forth the process for initiating an amendment by way of referendum.

> **(a) Filing.**--A petition containing a proposal for referendum on the question of amending a home rule charter or an optional plan of

7

>government signed by electors comprising 10% of the number of electors voting for the office of Governor in the last gubernatorial general election in the municipality, or an ordinance of the municipal governing body proposing amendment of a home rule charter or an optional plan, shall be filed with the election officials not later than the 13th Tuesday prior to the next primary, municipal or general election. The petition and the proceedings therein shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing and adjudication of nomination petitions insofar as such provisions are applicable, except that no referendum petition shall be signed or circulated prior to the 20th Tuesday before the election nor later than the 13th Tuesday before the election. The name and address of the person filing the petition shall be clearly stated on the petition.
>
>**(b) Review and disposition of petition.--**The election officials shall review the initiative petition as to the number and qualifications of signers. If the petition appears to be defective, the election officials shall immediately notify the persons filing the petition of the defect. When the election officials find that the petition as submitted is in proper order, they shall send copies of the initiative petition without signatures thereon to the governing body and to the Department of Community and Economic Development. The initiative petition as submitted to the election officials, along with a list of signatories, shall be open to inspection in the office of the election officials.

53 Pa. C.S. § 2943 (Petition for referendum or ordinance proposing amendment).

As reflected in Section 2943, the Law incorporates certain provisions of Pennsylvania's Election Code (25 P.S. §§ 2901 *et seq.*) "which relate to the signing, filing and adjudication of nomination petitions insofar as such provisions are applicable." Id. Finally, the Law has its own Definitions section. See 53 Pa. C.S. § 2902 (Definitions). Essential to the present discussion are the following definitions taken from Section 2902:

>"Election officials." The county boards of elections.
>
>"Electors." The registered voters of any municipality involved in proceedings relating to the adoption and repeal of optional forms of government.

53 Pa. C.S. § 2902.

## 2. *Plaintiffs' constitutional claims and requested relief.*

Plaintiffs allege that certain provisions of the Election Code, particularly those found in 25 P.S. § 2869, are unconstitutional insofar as they apply to the Law's referenda petition process in that they burden the Plaintiffs' First Amendment free speech, political speech and associational rights. Plaintiffs have identified four specific requirements which they claim are unconstitutional. First, Plaintiffs assert that "[t]he voter registration requirement imposed on those who execute the "Affidavit of Qualified Elector" of referendum petitions contained in 53 Pa. C.S.A. § 2943(a) of the Law and 25 P.S. § 2869 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny." See Amended Complaint (Doc. # 74), at ¶¶ 61 (facially), 69 (as applied).[3]

Second, Plaintiffs contend that "[t]he prohibition on out-of-state circulators executing the 'Affidavit of Qualified Elector' of referendum petitions, for circulators willing to submit to the jurisdiction of the Commonwealth of Pennsylvania, contained in 53 Pa. C.S.A. § 2943(a) of the Law and 25 P.S. § 2869 of the Pennsylvania Election Code places a severe burden on core political speech and is subject to strict scrutiny." See Amended Complaint (Doc. # 74), at ¶¶ 77 (facially), 85 (as applied).

Third, Plaintiffs allege that "Defendants' enforcement of 53 Pa. C.S.A. § 2943(a) and 25 P.S. § 2869 requiring witnesses of referendum petition circulation to secure a sworn affidavit from a notary public for each page of a referendum petition places a severe burden on core

---

[3] Thus, this case only deals with challenges relating to the signature collection process for local referenda. Plaintiffs' present challenge does not appear to challenge provisions of the Election Code related to gathering signatures for persons seeking a nomination on the primary ballot. See, e.g., De La Fuente v. Cortés, 751 F.App'x 269, 274-275 (3d Cir. 2018)(upholding certain registration requirements in 25 P.S. § 2869(a) for candidates to be placed on the primary ballot of a major political party in Pennsylvania).

political speech and is subject to strict scrutiny." See Amended Complaint (Doc. # 74), at ¶¶ 94 (facially), 105 (as applied).

As for relief, Plaintiffs seek the following:

a. Enter declaratory judgment against all challenged provisions of 53 Pa.C.S.A. § 2943(a) and 25 P.S. § 2869 as detailed in Counts I through VI above, or any combination thereof;

b. Enter a preliminary injunction, enjoining Defendants from enforcing the challenged provisions and interpretations of 53 Pa.C.S.A. § 2943(a) and 25 P.S. § 2869 as detailed in Counts I through VI above, or any combination thereof, against all Plaintiffs now and in the future;

c. Permanently enjoin Defendants from enforcing the challenged provisions of 53 Pa.C.S.A (a) and 25 P.S. § 2869 for referendum petitions now and in the future;

d. Award Plaintiffs the cost of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988; and,

e. Retain jurisdiction of this action and grant Plaintiffs such other relief which may in the determination of this Honorable Court to be necessary and proper.

Amended Complaint (Doc. # 74), at 32-33 ("Request for Relief").

*3. Discussion.*

Plaintiffs bring a number of claims regarding the purported enforcement of certain provisions of Pennsylvania's Home Rule and Optional Plans Law which incorporate certain requirements imposed by Pennsylvania's Election Code in the context of efforts by OpenPittsburgh.org to place a referendum initiative related to the operation of the local government of the City of Pittsburgh on the ballot for an upcoming general election. Yet, insofar as Plaintiff is suing the Secretary of the Commonwealth, all such claims should be dismissed because these state officials play no role and have no involvement in the electoral process at issue.

The Amended Complaint identifies Secretary Boockvar by name and title and makes generic and general allegations about her respective powers.  See, e.g., Amended Complaint (Doc. # 74), at ¶¶ 1, 22 (the Secretary of the Commonwealth "is the Commonwealth's chief election official and has ultimate authority over the enforcement of the Pennsylvania Election Code and, more specifically, the challenged provisions of 25 P.S. § 2869").  No other allegations are made specifically against Secretary Boockvar in the Amended Complaint, nor is she otherwise named with respect to any other specific allegation in the Amended Complaint.  These two sections of the Amended Complaint are the only instances where Secretary Boockvar is named or identified.

Nevertheless, there are numerous allegations which assert that the "Defendants" collectively have taken or have the authority to take action with respect to the referenda petitions at issue in this case.  See, e.g., Amended Complaint (Doc. # 74), at ¶ 32 ("Defendants are authorized to strike and refuse the filing any referendum petition when the "Affidavit of Qualified Elector" is executed by anyone who is not a registered elector of the Commonwealth of Pennsylvania").  See also Amended Complaint (Doc. # 74), at ¶¶ 64-66, 72-74, 80-82, 88-90, 94-99, 105-110.

Initially, then, such allegations are entirely insufficient to state a claim under the Supreme Court's seminal decisions on pleading in Twombly and Iqbal.[4]  Specifically, courts have held that, in the context of multiple defendants, allegations which fail to identify the specific conduct of a particular defendant which is challenged do not meet the pleading requirements imposed by the rules, as interpreted by Twombly and Iqbal.  For example, as noted by one court:

> Plaintiff's current operative pleading suffers from a substantial defect:  it fails to distinguish among the many Defendants, simply

---

[4] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

11

> asserting that all Defendants are liable on each of the multiple theories of relief asserted. This collective treatment of all Defendants is improper. *Plaintiff must allege the specific action or involvement of each Defendant in relation to each claim asserted*…. Twombly and Iqbal demand more than a conclusory assertion that 'Defendants individually, jointly and severally ... denied the Plaintiff her Civil Rights ...,' the manner in which Plaintiff has now pleaded her case. Plaintiff is warned that failure to plead facts that show how a particular Defendant played some role in or otherwise bears liability for the alleged actionable conduct will result in the dismissal of that party from this case.

Warren v. Luzerne County, 2010 WL 521130, *10 n. 5 (M.D.Pa. 2010)(emphasis added). See also Arneault v. O'Toole, 864 F. Supp. 2d 361, 386 (W.D.Pa. 2012), *aff'd on other grounds*, 513 F.App'x 195 (3d Cir. 2013)("We find that Plaintiffs' repeated, generic references to the 'Government Defendants' … to be deficient under the pleading standards set forth in [Twombly] and [Iqbal]").

This Court, in Kester v. Zimmer Holdings, Inc., 2010 WL 2696467 (W.D.Pa. 2010), ruled "that the speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury and the Complaint, therefore, is insufficient and speculative under Twombly and Iqbal. Id., at *6. The Kester court continued, identifying

> analogous cases that support this conclusion and which have held that a plaintiff's generic averments and formulaic recitations fail under the federal pleading standard. See Sherman v. Stryker Corp., No SAVC 09-224 JVS (ANx), 2009 U.S. Dist. LEX IS 34105 (C.D.Cal. March 30, 2009); Dittman v. DJO, LLC, No. 09-cv-027910WD M-KLM, 2009 U.S. Dist. LEXIS 97106 (D.Colo. Oct. 5, 2009); Gilmore v. DJO, Inc., No. 2:08-cv-1252-HRH, 2009 U.S. Dist. LEX IS 96690 (D.Ariz. Oct. 15, 2009). The Court also takes judicial notice of additional cases that have addressed this very issue and dismissed analogous complaints pursuant to Fed. R.Civ. P. 12(b)(6). See Combs v. Stryker Corp., No. 2:09-cv-02018-JAM-GGH, 2009 WL 4929110 (E.D.Cal. Dec.14, 2009); Haskins v. Zimmer Holdings, Inc., No. 1:09-CV-236, 2010 WL 342552 (D.Vt. Jan. 29, 2010); Timmons v. Linvatec Corp., CV09-

>7947 R(SSx), 2010 U.S. Dist. LEXIS 14057 (W.D.Cal. Feb. 9, 2010); Adams v. I-Flow Corp., Case No. CV09-09550 R(SSx), 2010 U .S. Dist. LEXIS 33066 (C.D.Cal. Mar. 30, 2010); Peterson v. Breg, Inc., 2:09-cv-2044 JWS, 2010 U.S. Dist. LEXIS 48985 (D.Ariz. April 28, 2010).

Kester v. Zimmer Holdings, Inc., 2010 WL 2696467, at *6. See Esposito v. I-Flow Corp., 2011 WL 5041374, *5 (E.D.Pa. 2011)(applying Kester). See also Gaffney v. United States, 2016 WL 1357601, *3 (M.D.Pa. 2016). Cf. B.D. v. Board of Education of the Greater Egg Harbor Regional High School District, 2015 WL 4508303, *6 (D.N.J. 2015)("plaintiffs' conclusory discrimination and retaliation claims against all 'defendants' collectively must be dismissed under Twombly/Iqbal").[5]

Thus, Plaintiffs reliance on repeated, generic references to the "Defendants" collectively throughout the allegations of their Amended Complaint, without differentiation as to the particular acts or omissions of each respective defendant which are said to have caused the constitutional violation(s) of which Plaintiffs complain, is fatal to their efforts to state a claim against any defendant, including Secretary Boockvar. Consequently, for this reason alone, the Amended Complaint should be dismissed.

---

[5] Secretary Boockvar is aware that "'Collective' or 'group' pleading in a complaint is not *per se* improper and may not, in itself, always be fatal to a claim. See, e.g., Howard v. Mun. Credit Union, No. 05-cv-7488, 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008)("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each [d]efendant on notice of what they allegedly did or did not do" (citation omitted)). However, as one court has noted, 'a complaint that repeatedly refers to defendants collectively, without differentiation, is more likely to run afoul of the plausibility standard of Iqbal and Twombly.' In re Am. Apparel, Inc. S'holder Derivative Litig., CV 10-06576 MMM RCX, 2012 WL 9506072 (C.D.Cal. July 31, 2012)." Slack v. Int'l Union of Operating Engineers, 2014 WL 4090383, *16 (N.D.Cal. 2014). Instantly, as discussed above, because Plaintiffs' Amended Complaint repeatedly refers to the Defendants in this action "collectively, without differentiation, [it] is more likely to run afoul of the plausibility standard of Iqbal and Twombly." That is especially true where, as here, Secretary Boockvar is not factually alleged to have any role in reviewing, accepting or rejecting Plaintiffs' referendum petition.

The following arguments proceed in the alternative:

Plaintiffs have brought this action under Section 1983.  See Amended Complaint (Doc. # 74), at ¶ 4.  In an appropriate case, state officials such as Secretary Boockvar are subject to suit under Section 1983 in their respective official capacities for prospective injunctive relief.  The relevant legal principles are adequately presented in the following terms:

> 'The Eleventh Amendment bars a suit against state officials when the State is the real, substantial party in interest, regardless of whether the suit seeks damages or injunctive relief.'  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  In Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, the Supreme Court 'recognized an important exception to this general rule:  a suit challenging the federal constitutionality of a state official's action is not one against the State.'  Pennhurst, 465 U.S. at 89, 104 S.Ct. 900 (*citing* Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714).  However, 'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury....'  Edelman v. Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).  An 'award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment.'  Missouri v. Jenkins by Agyei, 491 U.S. 274, 279, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

Lewis v. Rendell, 501 F.Supp.2d 671, 678-679 (E.D.Pa. 2007).  See Celec v. Edinboro University, 132 F.Supp.3d 651, 665 (W.D.Pa. 2015)("'a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State"'")(*quoting* Will v. Michigan Department of State Police, 491 U.S. 58, 71 n. 10 (1989)(*quoting* Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) *and* Ex parte Young, 209 U.S. at 159-160).

Interestingly enough, the legal framework applicable to this case was also implicated in a challenge to the Election Code brought by several political bodies (the Constitution Party of

14

Pennsylvania, the Green Party of Pennsylvania, and the Libertarian Party of Pennsylvania)[6] seeking to place candidates on the election ballot. That suit was brought under Section 1983 against a former Secretary of the Commonwealth and Pennsylvania's Commissioner of Elections, in their respective official capacities only. In that case, the Third Circuit initially stated that,

> [a]s we have held on multiple occasions, while suits against a non-consenting State are barred by the Eleventh Amendment, a party can sue a state official under Ex Parte Young for acting in violation of a federal law or the Constitution:
>
> > The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct.

Constitution Party of Pennsylvania v. Cortés, 2016 WL 3094123, *6 (3d Cir. 2016)(*quoting* MCI Telecommunication Corp. v. Bell Atlantic of Pennsylvania, 271 F.3d 491, 506 (3d Cir. 2001)).

However, the court cautioned that "[s]uch a suit, however, cannot simply seek to make the state officials 'representative[s] of the state.' Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

> Instead, '[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act.' Id. That said, we have held that even 'entirely ministerial' duties can be sufficient under Young, because 'the inquiry is not into the nature of an

---

[6] The Third Circuit notes that, "[d]espite referring to themselves as the 'Minor Parties,' the organizational Appell[ees] are in fact not minor parties but are 'political bodies' for purposes of the election code....," and refers to these political organizations in its opinion as "Aspiring Parties." See Constitution Party of Pennsylvania v. Cortés, 2016 WL 3094123, *1 n. 1 (3d Cir. 2016).

> official's duties but into the effect of the official's performance of his duties on the plaintiff's rights.' Finberg v. Sullivan, 634 F.2d 50, 54 (3d Cir. 1980).

Id.

Nevertheless, the Third Circuit rejected the Commonwealth's arguments that the Secretary and Commissioner "had no connection to the enforcement of the provisions causing harm to the Aspiring Parties, and thus were improper defendants under 42 U.S.C. § 1983." See Constitution Party of Pennsylvania v. Cortés, 2016 WL 3094123, at *6. Said the court,

> Our case law likewise supports the notion that the Appellants in this case play a sufficient role in administering § 2911(b) and other ballot-access provisions to be named as the defendants in Appellees' § 1983 suit. See Rogers, 468 F.3d at 190 (considering the facial constitutionality of § 2911(b) in a § 1983 suit brought against Secretary Cortés himself); Belitskus, 343 F.3d at 638 (reviewing the merits of a § 1983 suit against the Secretary of the Commonwealth and the Election Commissioner challenging filing fees associated with accessing the Pennsylvania ballot, noting that the Secretary of the Commonwealth "is responsible for overseeing various aspects of the Commonwealth's election process, including receipt of candidates' nomination petitions and filing fees" and that the Election Commissioner "has administrative responsibility for various aspects of the election process, including ballot access"). While Appellees' suit challenges the combined effect of § 2911(b) and § 2937, it appears clear that, based on our own jurisprudence, § 2911(b) is sufficient to bring the named defendants into this suit.

Constitution Party of Pennsylvania v. Cortés, 2016 WL 3094123, at *7.

However, there are critical differences between the context of the challenges brought in Constitution Party of Pennsylvania v. Cortés and the challenges brought by the Plaintiffs in this case. The paramount distinction is that the present case arises under the Home Rule and Optional Plans Law which expressly imposes the ministerial obligations identified in Constitution Party of Pennsylvania v. Cortés on the county boards of elections. See 53 Pa. C.S. §§ 2902, 2943(b). Indeed, neither the Law, nor the incorporation of the particular provisions of

> official's duties but into the effect of the official's performance of his duties on the plaintiff's rights.' Finberg v. Sullivan, 634 F.2d 50, 54 (3d Cir. 1980).

Id.

Nevertheless, the Third Circuit rejected the Commonwealth's arguments that the Secretary and Commissioner "had no connection to the enforcement of the provisions causing harm to the Aspiring Parties, and thus were improper defendants under 42 U.S.C. § 1983." See Constitution Party of Pennsylvania v. Cortés, 2016 WL 3094123, at *6. Said the court,

> Our case law likewise supports the notion that the Appellants in this case play a sufficient role in administering § 2911(b) and other ballot-access provisions to be named as the defendants in Appellees' § 1983 suit. See Rogers, 468 F.3d at 190 (considering the facial constitutionality of § 2911(b) in a § 1983 suit brought against Secretary Cortés himself); Belitskus, 343 F.3d at 638 (reviewing the merits of a § 1983 suit against the Secretary of the Commonwealth and the Election Commissioner challenging filing fees associated with accessing the Pennsylvania ballot, noting that the Secretary of the Commonwealth "is responsible for overseeing various aspects of the Commonwealth's election process, including receipt of candidates' nomination petitions and filing fees" and that the Election Commissioner "has administrative responsibility for various aspects of the election process, including ballot access"). While Appellees' suit challenges the combined effect of § 2911(b) and § 2937, it appears clear that, based on our own jurisprudence, § 2911(b) is sufficient to bring the named defendants into this suit.

Constitution Party of Pennsylvania v. Cortés, 2016 WL 3094123, at *7.

However, there are critical differences between the context of the challenges brought in Constitution Party of Pennsylvania v. Cortés and the challenges brought by the Plaintiffs in this case. The paramount distinction is that the present case arises under the Home Rule and Optional Plans Law which expressly imposes the ministerial obligations identified in Constitution Party of Pennsylvania v. Cortés on the county boards of elections. See 53 Pa. C.S. §§ 2902, 2943(b). Indeed, neither the Law, nor the incorporation of the particular provisions of

the Election Code incorporated therein, imposes any duty or obligation on the Secretary of State –or any other Commonwealth official– in the process by which referenda petitions are submitted, reviewed and accepted or rejected.  <u>See</u> 53 Pa. C.S. § 2943(b).  Moreover, the plain language of the Law makes clear that those duties and responsibilities fall, in this case, to Defendant Wolosik and other members of the Allegheny County Board of Elections.  <u>See</u> 53 Pa. C.S. §§ 2902, 2943(b).  Thus, Secretary Boockvar should be dismissed as a party in this case simply because he plays no role and has no involvement in the process being challenged.

Indeed, the claims involve the potential enforcement of certain provisions of the Home Rule and optional Plans Law and, by implication, the Election Code by Allegheny County election officials with respect to a local ballot initiative involving the City of Pittsburgh.  Yet, nothing in the Election Code –or in the Home Rule and Optional Plans Law under which the present referendum was initiated– places any burden or obligation on the Secretary with respect to local ballot initiatives authorized by the Law.  Those responsibilities and obligations fall to local election officials in the county where the initiative is presented.  <u>See</u> 53 Pa. C.S. §§ 2902, 2943.  Moreover, there is no allegation or evidence that the Secretary of the Commonwealth has given local county election officials any guidance or direction on the manner in which petitions submitted under 53 Pa. C.S. § 2943 should be handled, reviewed or processed.  That process is left entirely to the discretion of local county election officials.

Secretary Boockvar's lack of any connection to or involvement in this matter is further buttressed by reference to the relief sought by the Plaintiffs in this matter.  The relief requested in Plaintiffs' Amended Complaint has been set forth above, *supra*, at 7-8.  With respect to Secretary Boockvar, no relief is specifically sought against her; rather, all relief is sought from "Defendants."  <u>See</u> Amended Complaint (Doc. # 74), at 32-33 ("Request for Relief").

Nevertheless, to the extent that Secretary Boockvar is a Defendant, Plaintiffs are seeking to enjoin, *inter alia*, Secretary Boockvar from enforcing the identified provisions of the Home Rule and Optional Plans Law and Election Code with respect to Plaintiffs' circulation of referendum petitions. Yet, a careful review of the relevant statutes –and particularly Section 2943 of the Law which sets forth the process to be followed– reflect that the Commonwealth does not play any role whatsoever in this process.

Indeed, Secretary Boockvar does not "review the initiative petition as to the number and qualifications of signers." Cf. 53 Pa. C.S. § 2943(b). Secretary Boockvar does not determine "[i]f the petition appears to be defective." Id. Secretary Boockvar does not "immediately notify the persons filing the petition of the defect." Id. Secretary Boockvar does not determine whether "the petition as submitted is in proper order." Id. Finally, Secretary Boockvar does not "send copies of the initiative petition without signatures thereon to the governing body and to the Department of Community and Economic Development." Id. Secretary Boockvar is not responsible for and does not participates in this process in any way. Nor does Secretary Boockvar have any oversight or review over the county boards of elections responsible for conducting these responsibilities and obligations under Section 2943(b).

In fact, Section 2943(b) expressly grants this responsibility and obligation to "[t]he election officials," who are elsewhere defined in this chapter as "[t]he county boards of elections." See 53 Pa. C.S. § 2902 (Definition of "Election officials"). Accordingly, the Secretary of the Commonwealth should be dismissed from this action because, contrary to the allegation in the Amended Complaint, she does not enforce the challenged provisions of either 53 Pa. C.S. § 2943(a) or 25 P.S. § 2869 in the context of local ballot referenda. Specifically, Secretary Boockvar is not able to provide any of the relief requested by Plaintiffs in this matter.

## IV. **CONCLUSION**

WHEREFORE, Secretary Boockvar respectfully requests that the instant motion be granted and that Secretary Boockvar be dismissed as a party to the instant action.[7]

Respectfully submitted,

JOSH SHAPIRO
Attorney General

Office of Attorney General
Litigation Section
1521 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Phone: (412) 565-3586
Fax:    (412) 565-3019

Date:  June 7, 2019

 s/ Scott A. Bradley
Scott A. Bradley
Senior Deputy Attorney General
Attorney I.D. No. 44627

Keli M. Neary
Chief Deputy Attorney General

---

[7] In the event that Secretary Boockvar is dismissed from this case and the case proceeds nonetheless against the County Defendants, the Attorney General will seek to intervene in this matter to defend any remaining constitutional challenges.