## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OPENPITTSBURGH.ORG and TRENTON POOL,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | **2:16-cv-1075-MRH** |
| v. | : | |
| | : | |
| **DAVID VOYE, in his official capacity as the Manager of the Allegheny County Division of Elections; THE HONORABLE KATHRYN M. HENS-GRECO, in her official capacity as an interim Member of the Allegheny County Board of Elections; THE HONORABLE THOMAS BAKER, in his official capacity as an interim Member of the Allegheny Board of Elections; THE HONORABLE ROBERT PALMOSINA, in his official capacity as an interim Member of the Allegheny County Board of Elections; and KATHRYN BOOCKVAR, in her official capacity as the acting Secretary of the Commonwealth of Pennsylvania,** | : : : : : : : : : : : : : : : : : | |
| | : | *Filed Electronically* |
| **Defendants.** | : | |

## PLAINTIFFS' CONSOLIDATED AMENDED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## **TABLE OF CONTENTS**

Table of Contents………………………………………………….….…..2

Table of Authorities……………………………………………………...……3

Introduction……………………………………………………………….…..7

Standard of Review……………………………………………………...…….9

Argument…………………………………………………………………......11

      A.    All Defendants Are Proper and Necessary Parties to this Action…...11

            1.    County Defendants are Proper Parties………………………..11

            2.    The Secretary of State is a Proper and Necessary
                Party to this Action…………………………………………...13

      B.    Plaintiffs Have Standing to Maintain Their Claims……………......15

      C.    The Mootness Exception is Applicable to the Instant Action………20

      D.    Plaintiffs State a Valid Claim with Respect to Their Challenge
          To the Voter Registration & Residency Requirement to Circulate
          Referendum Petitions to Amend Home Rule Charters in the
          Commonwealth of Pennsylvania…………………………………25

            1.    52 Pa. C.S.A. § 2943(a) and 25 P.S. § 2869 Impose a
                Burden on Political Speech and Must be Reviewed Under a
                Strict Scrutiny Standard……………………………...…..30

            2.    Defendants Cannot Save the Voter Registration and
                Residency Requirements Under Strict Scrutiny Analysis……32

Conclusion……………………………………………………………......33

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
　　　468 U.S. 737 (1984)……………………………………………….…16

*Ashcroft v. Iqbal*,
　　　556 U.S. 662 (2009)…………………………………………….......10, 11

*Babbit v. Farm Workers*,
　　　442 U.S. 289 (1979)…………………………………....……………17, 19

*Bell Atlantic Corp. v. Twombly*,
　　　550 U.S. 544 (2007)…………………………………………….……10

*Benezet Consulting, LLC v. Boockvar*,
　　　433 F.Supp.3d 670 (M.D. Pa. 2020)………………...………….....14, 30

*Board of Trs. Of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund
v. Wettlin Assocs., Inc.*,
　　　237 F.3d 270 (3rd Cir. 2001)……………………………………..……11

*Buckley v. American Const. Law Found, Inc.*,
　　　525 U.S. 182 (1999)…………………………………………....…passim

*Burdick v. Takushi*,
　　　504 U.S. 428 (1992)……………………………………………....31, 33

*Citizens in Charge v. Gale*,
　　　810 F.Supp.2d 916 (D. Neb. 2011)…………………………….....……28

*Conley v. Gibson*,
　　　355 U.S. 41 (1957)………………………………………………....…12

*Daien v. Ysursa*,
　　　711 F.Supp.2d (D. Idaho 2010)……………………………...........18-20

*Davis v. Fed. Election Comm'n*,
　　　554 U.S. 724 (2008)………………………………………………..…16

*De Funis v. Odegaard*,
    416 U.S. 312 (1974)……………………………………………………..22

*De La Fuente v. Padilla*,
    930 F.3d 101 (9th Cir. 2019)………………………………..…………..17, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*,
    528 U.S. 167 (2000)……………………………………………………….16

*Green Party of Pennsylvania v. Aichele*,
    89 F.Supp.3d 723 (E.D. Pa. 2015)…………………………….……....*passim*

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)…………………………………………………………12

*Idaho Coalition United for Bears v. Cenarrusa*,
    234 F.Supp.2d 1159 (D. Idaho 2001)………………………………….....20

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006)…………………………………..……19

*In re Associated Press*,
    162 F.3d 503 (7th Cir. 1998)…………………………………………..…25

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3rd Cir. 1993)…………………………………………..……11

*Krislov v. Rednour*,
    226 F.3d 851 (7th Cir. 2000)………………………………………....24, 29

*Libertarian Party of Va. v. Judd*,
    718 F.3d 308 (4th Cir. 2013)………………………………………….…29

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)……………………………………………..…..16

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000)………………………………………....19

*Lujan v. Defenders of Wildlife*,

4

504 U.S. 555 (1992)……………………………………………….…..16

*Marijuana Policy Project v. Miller*,
224 578 F.Supp.2d 1290 (D. Nev. 2008)…………………………….………19

*Meyer v. Grant*,
486 U.S. 414 (1988)……………………………………………..*passim*

*Morrill v. Weaver*,
224 F.Supp.2d 882 (E.D. Pa. 2002)……………………………………..27

*Nader v. Blackwell*,
545 F.3d 459 (6th Cir. 2008)……………………………………..…..29, 33

*Nader v. Brewer*,
531 F.3d 1028 (9th Cir. 2008)………………………………………...…29

*Orion Sales, Inc. v. Emerson Radio Corp.*,
148 F.3d 840 (7th Cir. 1998)…………………………………………..25

*Papasan v. Allain*,
478 U.S. 265 (1986)………………………………………………..10

*Patriot Party of Allegheny County v. Allegheny County Dept. of Elections*,
95 F.3d 253 (3rd Cir. 1996)……………………………………13, 24, 25

*Rocks v Philadelphia*,
868 F.2d 644 (3rd Cir. 1989)…………………………………………..11

*Rosario v. Rockefeller*,
410 U.S. 752 (1973)…………………………………………………..24

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009)………………………………………....16

*Unger v. National Residence Matching Program*,
928 F.2d 1392 (3rd Cir. 1991)……………………………………...…10, 11

*We The People PAC v. Bellows*,
2021 WL 569039 (D. Maine, Feb. 16, 2021)………………………14, 15, 30

*Yes on Term Limits v. Savage*,
    550 F.3d 1023 (10th Cir. 2008)……………………………………….…………33

*Zellous V. Broadhead Assoc.*,
    906 F.2d 94 (3rd Cir. 1990)………………………………………………………23

## Statute & Constitutional Provisions

U.S. Const. Art. III § 1………………………………………………...……16

U.S. Const. amend. I…………………………………………...…….*passim*

U.S. Const. amend. XIV..………………………………………...…….*passim*

25 P.S. § 2869…………………………………………….........8, 26, 27

53 Pa. C.S.A. § 2943 (a)……………………………………………8, 26, 27

## Other Authority

W. and Miller, *Federal Practice and Procedure*, § 1357…………………....11

# I.   __INTRODUCTION__

Plaintiffs OpenPittsburgh.Org and Trenton Pool file this amended memorandum of law in opposition to the motion to dismiss filed by the County Defendants (the members of the Allegheny County Board of Elections and the Manager of the Allegheny County Division of Elections) and Defendant Secretary of State.  Plaintiffs continue to have standing to maintain this action both because they continue to express an intention to circulate petition to amend the Home Rule Charters of Allegheny County and the City of Pittsburgh in future elections and because the exception to the mootness doctrine of "capable of repetition, yet evading review" applies to this case such that Plaintiffs' unchallenged standing in 2016 to maintain this action carries over to continue to vest standing in Plaintiffs to challenge the incorporation of 25 P.S. § 2869's ban on out-of-state and unregistered voters from circulating petitions to amend Home Rule Charters in Pennsylvania under 53 Pa.C.S.A. § 2943(a).  Defendants are proper parties to this action as the chief elections official for the Commonwealth of Pennsylvania and the government officials charged by the Commonwealth to enforce the challenged unconstitutional provisions at the time the petitions are filed with the County Defendants.  Prospective equitable relief against Defendants is necessary to enjoin the County Defendants from rejecting petitions seeking to amend Pittsburgh and Allegheny County home rule charters circulated by out-of-state circulators willing

to submit to the jurisdiction of the Commonwealth and to achieve statewide from

Defendant Secretary of State as the chief election official for the Commonwealth.

While the Commonwealth's recent amendment to the Pennsylvania Election

Code no longer require petitions to amend Home Rule Charters be notarized

renders Plaintiffs' challenge to the notarization requirement moot, the

Commonwealth failed to drop the ban on out-of-state or unregistered voters from

circulating petitions to amend Home Rule Charters in Pennsylvania.  Accordingly,

Plaintiffs' challenge to the voter registration and residency requirement for

circulators of home rule charter amendment petitions is ripe for adjudication.

As an initial matter, Defendants' overarching theme that Plaintiff

OpenPittsburg.Org's failure to secure ballot access in previous attempts renders

their claims somehow invalid is wholly without merit.  This Court is well aware

that protection under the First Amendment of core political speech in the

circulation of election petitions is not contingent on showing past or future success

in securing ballot access.  The act of circulating petitions is protected without

regard to the success of the petition drive.  Defendants have cited no authority in

support of their effort to denigrate Plaintiffs' out of First Amendment protections.

Further, Plaintiffs' challenge to the ban on out-of-state and unregistered

circulators is not only a cognizable claim, it is meritorious and very likely to

succeed.  Accordingly, Defendants' motions to dismiss should be denied.

## II.   <u>STANDARD OF REVIEW</u>

As the Supreme Court further held in *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544 (2007), a plaintiff is not required to set forth "detailed factual allegations"

in order to survive a motion to dismiss.  *Id*. at 555 (citing *Papasan v. Allain*, 478

U.S. 265, 286 (1986)).  To survive a motion to dismiss, a complaint must merely

contain sufficient factual matter, accepted by the court as true, to "state a claim to

relief that is plausible on its face."  *Id*. at 570.

> "[T]he pleading standard Rule 8 announces does not require detailed
> factual allegations, but it demands more than an unadorned, the-
> defendant-unlawfully-harmed-me accusation.   A pleading that offers
> labels and conclusions or a formulaic recitation of the elements of a cause
> of action will not do.  Nor does a complaint suffice if it tenders naked
> assertion[s] devoid of further factual enhancements."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  (alteration in original) (internal

quotation and citation omitted).  Under the new formulation articulated under

*Twombly* and *Iqbal*, a plaintiff need only articulate facts that, when accepted as

true, "show" he is plausibly entitled to relief.  *Twombly*, 550 U.S. at 557.

However, on a motion to dismiss, courts "are not bound to accept as true a legal

conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

relief.'"  *Iqbal*, 556 U.S. at 679 (alteration in original) (citing Fed. R. Civ. P.

8(a)(2)).  As the Supreme Court stated: "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id*. at 44.  Further, Rule 8, F.R.Civ.P., makes it clear that "a complaint need only set out a generalized statement of facts from which the defendant will be able to frame a responsive pleading.  Few complaints fail to meet this liberal standard and become subject to dismissal."  W. and Miller, *Federal Practice and Procedure*, § 1357.

The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is to test the legal sufficiency of the allegations contained in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir. 1993).  In *Kost*, the Third Circuit held that complaints need only set forth sufficient information to: 1) outline the elements of a claim; or 2) allow inferences to be drawn which support the existence of the elements of a claim.  *Id.*  Thus in reviewing a motion to dismiss, this Court must accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them.  *See Board of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3rd Cir. 2001); *Unger v. National Residence Matching*

*Program*, 928 F.2d 1392, 1394-95 (3rd Cir. 1991); *see also, Rocks v. Philadelphia*, 868 F.2d 644 (3rd Cir. 1989).

A motion to dismiss will only be granted if it is clear that relief cannot be granted to Plaintiff under any set of facts that could be proven consistent with the complaint's allegations.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

III.  **ARGUMENT**

A.  **All Defendants Are Proper and Necessary Parties to this Action.**

**1. County Defendants are Proper Parties.**

The County Defendants are proper parties because they are charged by the Commonwealth to enforce the challenged statute at the point when proponents of an amendment to a Home Rule Charter file their petitions with the local board of election.  Defendants exercise their authority as officials of the board of elections for Allegheny County.  The Commonwealth has charged these Defendants with enforcing the Pennsylvania Election Code provisions which are challenged in this action.  Allegheny County, itself, exists as a governmental entity solely as a result of the Commonwealth.  Accordingly, they cannot be heard to complain that they have no role on enforcing the challenged provisions and therefore, not proper Defendants simply because they do not care what the law is.  Defendants' alleged

ambivalence as to the ban on out-of-state or unregistered circulators is insufficient to remove them from this action as proper and necessary Defendants.

With respect to the county defendants, this case is no different from *Patriot Party of Allegheny County v. Allegheny County Dept. of Elections*, 95 F.3d 253, 257 (3rd Cir. 1996) where a local political party sued the Allegheny County Board of Elections to enjoin an unconstitutional provision of the Pennsylvania Elections Code that the county board of elections was required to enforce. Neither this Court nor the Third Circuit Court of Appeals dismissed the Allegheny County Board of Elections from *Patriot Party of Allegheny County* as either an improper or unnecessary party. Furthermore, the fact that the equitable relief issued by this court enjoining these Defendants from enforcing the voter registration and residency requirement and Plaintiffs' subsequent ability to file petitions circulated by out-of-state circulators shows that these Defendants are proper and necessary parties to this action. Accordingly, Plaintiffs have properly plead their claims against the County Defendants and Defendants' motion to dismiss should be denied.

### 2. The Secretary of State is a Proper and Necessary Party to this Action.

The Secretary of State of Pennsylvania has actively opposed each and every other action in federal and state court to set aside the challenged voter registration and residency requirements. *See e.g.*, *Green Party of Pennsylvania v. Aichele*, 89

F.Supp.3d 723 (E.D. Pa. 2015) (residency requirement for circulators of

nomination papers for third party and independent candidate ballot access

unconstitutional); *Benezet Consulting, LLC v. Boockvar*, 433 F.Supp.3d 670 (M.D.

Pa. 2020) (enjoining voter registration and residency requirement as

unconstitutional as applied to Plaintiffs for the circulation of nomination petitions

for the 2020 Pennsylvania Republican presidential primary election).  In *Benezet*

*Consulting, LLC*, the Secretary of State defended the voter registration and

residency restrictions, and continues to do so[1] in Plaintiffs' appeal of the lower

court's limited remedy to the Third Circuit.  This action, beyond actual relief for

Plaintiffs, is an extension of an effort to rid the Commonwealth, once and for all,

of obvious unconstitutional ballot access requirements.  Plaintiffs know of no

authority that would support the dismissal of the Secretary of State from a

constitutional challenge of a state law imposing an alleged unconstitutional ballot

access restriction.  To the contrary, the Secretary of State as the chief elections

official of a state is routinely accepted as a proper party to a constitutional

---

[1] Plaintiffs in *Benezet Consulting, LLC v Boockvar*, 433 F.Supp.3d 670 (2020), appealed to the Third Circuit the limited as applied relief granted by Judge Kane in *Benezet*.  Plaintiffs are asking the Court of Appeals to order the as applied relief to be permanent and applicable to all similarly situated individuals as Plaintiffs.  It should be noted that Defendant Boockvar did not file a cross-appeal on the merits of Judge Kane's decision that the voter registration and residency requirement violated the First Amendment to the United States Constitution – the same provision incorporated for the circulation of petitions to amend home rule charters in the Commonwealth.

challenge to a state imposed ballot access restriction.  In *We the People PAC v. Bellows*, 2021 WL 569039 (D. Maine, February 16, 2021), the district court issued a preliminary injunction against a challenged voter registration and residency requirement imposed on the circulation of initiative petitions in Maine.  In Maine, initiative petitions are required to be filed with local town clerks to validate signatures.  Town clerks are vested, in the first instance, with enforcement of state law and required to reject any initiative petition which fails to follow state mandates.  Nevertheless, Defendant Secretary of State was never challenged as a proper party to the Maine action.[2]

In practical and real terms, the Secretary of State is the chief election official for the Commonwealth of Pennsylvania.  Evidence will establish that the Secretary of State routinely oversees and exercises her authority over election matters delegated by the Commonwealth to local election boards.  In 2020, the Secretary of State sought to control and micromanage the running of local mail-in ballot programs delegated by the Commonwealth to the local county election boards.  Accordingly, the mere fact that the Commonwealth has delegated the filing of

---

[2] The Maine Secretary of State, unlike Pennsylvania's Secretary of State, is charged with the responsibility of certifying the number of signatures determined to be valid by the town elections clerks – a ministerial function which does not divest the town clerks, like in Pennsylvania, with the responsibility of enforcing the voter registration and residency requirement imposed by the Maine code.  For purposes of efficiency, Plaintiffs in *We The People PAC*, decided against naming every town election clerk in the State of Maine as a co-defendant, which would have numbered in excess of over 100 defendants.

home rule charter amendment petitions with the local jurisdiction, does not divorce the Commonwealth or the Secretary of State as the chief election official from ultimate responsibility for the voter registration and residency requirement that local officials are required to enforce.

Furthermore, the challenged statute applies with equal force to over fifty local home rule charter jurisdictions. Statewide relief, preventing expensive jurisdiction by jurisdiction litigation, depends on the Secretary of State being a party to this action.

**B.** **Plaintiffs Have Standing to Maintain Their Claims**

Article III of the United States Constitution limits federal court jurisdiction to actual "cases" and "controversies." *See*, U.S. CONST. Art. III §1; *see also*, *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). To satisfy the requirements of Article III standing, a party must suffer an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "injury in fact" inquiry focuses on "whether the party invoking jurisdiction had the requisite stake in the outcome," although the injury "need not be actualized." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Rather, a plaintiff may bring a suit based on a

prospective injury provided that the threat of enforcement is sufficiently "real, immediate, and direct." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also Babbitt v. Farm Workers*, 442 U.S. 289,298 (1979)(A plaintiff may challenge the prospective operation of a statute that presents a realistic and impending threat of direct injury).

In this action, Plaintiff OpenPittsburgh.Org continues to work toward launching a new petition to amend the Allegheny and Pittsburgh home rule charters to force local government to adopt more transparent government processes. Plaintiff OpenPittsburgh.Org has expressly represented that it seeks to circulate petitions to advance its agenda for open government for election. Plaintiff anticipates that the COVID-19 social restrictions which make it difficult to approach strangers in the street to collect signatures will, hopefully, abate in time to place a open government question on the ballot for the 2021 or, at the latest, the 2022 general election ballots. Plaintiff OpenPittsburgh.Org is actively working with counsel to qualify a petition to be circulated in 2021 for the 2021 general election ballot so that Plaintiff will be in a position to circulate their petition for 2021 if the pandemic conditions abate. *See*, Declaration of Tessitor, ECF Doc. # 113, filed, May 12, 2020.

In *De La Fuente v. Padilla* 930 F.3d 101 (9th Cir. 2019), the plaintiff was an independent presidential candidate in the 2016 general election. In order to gain

access to California's 2016 presidential general election ballot, Mr. De La Fuente was requirement to collect valid signatures on a nominating petition equal to 1% of the registered voter population of the State of California within a 105 day period. De La Fuente determined that collecting the required signatures within the 105 day window was not economically feasible and so decided to not circulate petitions to gain access to California's 2016 general election ballot.  Instead, De La Fuente filed a constitutional challenge to the number of signatures required to gain access and the time period within which he was required to collect the signatures.  The California Defendant, the Secretary of State, challenged Mr. De La Fuente's standing to maintain his action since he had failed to even attempt to collect the required signatures.  On appeal, the Ninth Circuit held De La Fuente had standing to challenge California's ballot access restrictions.  The Ninth Circuit explained that "De La Fuente has suffered a concrete injury that is not merely speculative. De La Fuente's declaration confirms that he is running for President of the United States in 2020" and "he will suffer an injury in fact.  He therefore has standing." *De La Fuente*, 930 F.3d at 1105.

Likewise, the mere intent to circulate petitions in future elections has been recognized by district courts within this circuit to confer the requisite concrete injury in fact sufficient to establish Article III standing to challenge ballot access restrictions.  In *Daien v. Ysursa*, 711 F.Supp. 1215 (D. Idaho 2010), the district

17

court held that an Arizona resident and past supporter of independent presidential

candidate Ralph Nader who wanted to gather signatures for a then yet unknown

independent presidential candidates in Idaho in future elections had standing to

challenge Idaho's requirement that only Idaho residents may freely circulate

election petitions in Idaho.  The *Daien* court relied on the Ninth Circuit's decision

in *LSO, Ltd. v Stroh*, 205 F.3d 1146 (9th Cir. 2000), instructing that "it is sufficient

for standing purposes that the plaintiff intends to engage in 'a course of conduct

arguably affected with a constitutional interest' and that there is a credible threat

that the challenged provision will be invoked against the plaintiff."  *LSO Ltd.*, *v*

*Stroh,* 205 F.3d 1146, 1154-55(9th Cir. 2000) (quoting *Farm Workers*, 442 U.S. at

298). The court is *Daien* further explained that:

> Other courts specifically examining a claimant's stated desire to
> engage in a course of conduct with a constitutional interest find
> standing where there is proof that the plaintiff: (1) has engaged in the
> type of speech affected by the challenged government action; (2)
> indicates a desire to engage in such speech in the future, and (3) has
> made a plausible claim that he will not do so because of a credible
> threat that the challenged regulation will be enforced.

*Daien*, 711 F.Supp. at 1223 citing, *Marijuana Policy Project v. Miller*, 578

F.Supp.2d 1290, 1301(D. Nev. 2008); *Initiative & Referendum Inst. v. Walker*, 450

F.3d 1082, 1089 (10th Cir. 2006)(en banc).  The court in *Daien* found that for

standing purposes, it is sufficient that *but for* the residency requirement, the

plaintiff in *Daien*, "a historic supporter of independent candidates, could circulate

petitions and gather signatures in Idaho today for any candidate." *Daien*, 711 F.Supp.2d at 1225.  The *Daien* court notes its finding was consistent with the decision in *Idaho Coalition United for Bears v. Cenarrusa*, 234 F.Supp.2d 1159 (D. Idaho 2001), which found standing where the individual plaintiffs previously circulated ballot initiative petitions and indicated an intent to do so in the future, even though the plaintiffs had no petitions to circulate at the time of the lawsuit they were well-known for their initiative work and had full control over whether they would engage in the initiative process.  *Daien*, 711 F.Supp.2d 1215 at 1226. The *Daien* court further noted that the *Cenarrusa* court found that plaintiffs' statements of future intent were neither hypothetical nor speculative. *Id*. The *Daien* court further noted that the Ninth Circuit upheld the decision in *Cenarrusa* on the merits and did not address the standing issue.  *Id.*; *see also Idaho Coalition United for Bears v. Cenarrusa*, 342 F.3d 1073 (9th Cir. 2003).

In this action, Plaintiffs have circulated petitions in Pittsburgh and Allegheny County in the past, have asserted that they intend to circulate initiative petitions in future elections, and there is no representation that the statute will not be enforced against Plaintiffs in the future it they were to use out-of-state petition circulators in violation of the challenged statute.

Accordingly, Plaintiffs have standing to maintain their remaining claim against all Defendants.

### C.   <u>The Mootness Exception is Applicable to the Instant Action</u>.

In reality, Defendants' argument that Plaintiffs' no longer have standing because the impairment of their rights under the First Amendment in the circulation of petitions to amend the Home Rule Charter of Allegheny County in 2016 has long since passed is actually a mootness argument.  It is very clear, however, that Defendants' do not expressly argue that this case is moot, because such an argument triggers application of the "capable of repetition yet evading review" exception to the mootness doctrine and doom Defendants' effort to convince this Court that Plaintiff OpenPittsburgh.Org lacks continued standing to maintain this action.  Instead, Defendants improperly attempt to conceal their mootness argument as a lack of standing argument so that they do not have to address the common exception to the mootness doctrine that is almost universally applied to litigation where the injuries are tethered to the election cycle.

In 2016, Plaintiffs circulated and filed petitions containing enough facially valid signature to place their question on the ballot.  At the time this action was filed, Plaintiff OpenPittsburgh.Org was actively circulating petitions to place their referendum question on the ballot but was lagging in collecting enough signatures as a direct and proximate result of the ban on out-of-state circulators and unregistered Pennsylvania residents from circulating petitions to amend Home Rule Charters in the Commonwealth.  After this Court entered the requested

preliminary injunction against the ban on out-of-state and/or unregistered petition circulators, Plaintiff OpenPittsburgh.Org collected, in less than one week, enough facially valid signatures to file their petitions with Defendants' employees.  At the time this action was filed, no Defendant argued that OpenPittsburgh.Org lacked standing because Defendants knew that Plaintiff OpenPittsburgh.Org was actively circulating petitions and the challenged statutory provisions clearly impaired rights guaranteed to Plaintiff OpenPittsburgh.Org under the First and Fourteenth Amendments to the United States Constitution.

The fact that the 2016 referendum petition has long since passed and this litigation continues triggers the well-known exception to the mootness doctrine to permit this action to continue to a decision on the merits – especially since Plaintiff OpenPittsburgh.Org has expressed a present intention to continue to circulate referendum petitions in the future to amend the home rule charters of Allegheny County and the City of Pittsburgh to advance Plaintiffs' agenda to force both governmental units to adopt more transparent procedures to protect the interest of the citizens residing therein..

As this Court is aware, the mootness doctrine is a principle of judicial procedure whereby courts will not decide cases where the underlying facts of the case have changed and there no longer exists any actual controversy. *See e.g.*, *De Funis v. Odegaa*rd, 416 U.S. 312 (1974).  An action  becomes moot when: (1)

there is no reasonable expectation that the alleged events will recur; and (2) interim relief or events have completely eradicated the effects of the violation. *See Zellous v. Broadhead Assoc.*, 906 F.2d 94, 100 (3rd Cir. 1990). Case in point, the Commonwealth's recent amendment of the Election Code to remove the requirement that political party nomination petitions (and, by extension, petitions to amend Home Rule Charters) must be notarized renders Plaintiffs' constitutional challenge to the notarization requirement of petitions to amend Home Rule Charters in this action moot.

However, the Commonwealth failed to alter the challenged requirement that circulators of nomination petitions (and, by extension, circulators of petition to amend Home Rule Charters) must be residents and registered voters of the Commonwealth of Pennsylvania. Accordingly, the Commonwealth has made it clear that the challenged provision will continue to be enforced against Plaintiffs absent a favorable resolution to this action, and the County Defendants will continue to reject the filing of any petition to amend the Home Rule Charters of Allegheny County and the City of Pittsburgh absent the continued enforcement of the preliminary injunction issued by this Court and/or resolution of this action on the merits in favor of Plaintiffs' claims.

In addition, Plaintiff OpenPittsburgh.Org's standing to maintain this action beyond the pendency of their 2016 petition drive is clearly subject to the "capable

of repetition yet evading review" exception to the mootness doctrine. Plaintiff's

standing extends beyond the 2016 election cycle where Plaintiff has expressed and

properly plead an intention to circulate petitions to amend the Home Rule Charters

of Allegheny County and the City of Pittsburgh and continue to be subjected to the

impairments to their rights directly caused by the ban on out-of-state and

unregistered petition circulators – as evidenced by the Commonwealth's failure to

drop the offending statutory impairments.

    For instance, in *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), the

Seventh Circuit held that the passage of the primary election in which plaintiffs

where subject to the Illinois ban on out-of-state petition circulators did not render

the claims moot because the plaintiffs in that action expressed an intent to seek

office in the future necessitating the circulation of petitions subject to the offending

residence requirement where there was no indication that the statute would not be

enforced in the future.

    The *Krislov* Court explained, citing, in part, Third Circuit precedent

rejecting similar arguments that Defendants in this action made in 1996 in *Patriot*

*Party of Allegheny County v. Allegheny County Dept. of Election*:

> As to mootness, everyone concedes the obvious, that the date of the
> primary election in which Krislov and Sullivan wished to participate
> has long since passed. Nevertheless, because the use of non-resident,
> non-registered solicitors is still prohibited by Illinois with respect to
> future elections, this case is capable of repetition yet evading review,
> a recognized exception to the mootness doctrine. *Rosario v.*

> *Rockefeller*, 410 U.S. 752, 756 n.5 (1973) (case was not moot
> although date of primary had passed and plaintiffs were eligible to
> participate in the election where their case was capable of repetition
> but likely  to evade review); *Patriot Party of Allegheny County v.*
> *Allegheny County Dept. of Elections*, 95 F.3d 253, 257 (3rd Cir. 1996).
> This exception to the mootness doctrine is applicable, as in the present
> case, where the challenged situation is likely to recur and the same
> complaining party would be subjected to the same adversity.  *In re*
> *Associated Press*, 162 F.3d 503, 511 (7th Cir. 1998); *Orion Sales, Inc.*
> *v. Emerson Radio Corp.*, 148 F.3d 840, 842 (7th Cir. 1998).  Because
> at least Krislov has articulated an interest in pursuing the Democratic
> Party's nomination for other elective offices, we have no doubt that
> this case meets the requirements.  Hence, the candidates have standing
> to bring this action and mootness is not a bar to the suit.

*Krislov*, 226 F.3d at 858.  In *Patriot Party of Allegheny County v. Allegheny*

*County Department of Elections*, the Third Circuit explained that the passage of an

election cycle did not render plaintiff's constitutional claims against state election

code statutes moot because:

> Although the 1993 election has come and gone, the district court
> found that "[i]f it were permitted to do so [the Patriot Party] would
> nominate a candidate who, like Mr. Eshenbaugh, has sought the
> nomination in the primary election by both major parties an who has
> succeeded in winning the nomination of one of those parties." Since
> this case was filed, the Patriot party has also challenged the
> Department's decision to reject the Party's cross-nomination of a
> candidate who was nominated by both the Democratic and Republican
> parties.  Although this latter controversy differs from our factual
> scenario, it indicates the likelihood that cross-nominations by third
> parties will continue to vex the Pennsylvania Department of Elections
> and the courts.
>
> Because cross-nomination by minor political parties are still
> prohibited by the Pennsylvania election laws, this case is capable of
> repetition, yet evading review.  There is "every reason to expect the
> same parties to generate a similar, future controversy subject to

identical time constraints…."   We hold therefore that this case is justiciable.

*Id*.

Accordingly, Plaintiffs' claims are not moot as a result of the long-since concluded 2016 election cycle in which Plaintiffs circulated petitions to amend the Home Rule Charter of Allegheny County and Plaintiffs' stated intent to circulate petitions in the future to amend the Home Rule Charters of both Allegheny County and the City of Pittsburgh.  *See*, Pl. 3rd Amend. Compl. at ¶¶ 12, 13, 15, 17, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 37, 38, 39, 47, 48, 49, 61.

  **D.** **Plaintiffs State a Valid Claim with Respect to their Challenge to the Voter Registration & Residency Requirement to Circulate Referendum Petitions to Amend Home Rule Charters in the <u>the Commonwealth of Pennsylvania</u>.**

As this Court has already ruled that Plaintiffs are likely to success on the merits of their challenge to the in-state witness and voter registration requirements of 53 Pa.C.S.A § 2943(a) it is clear that the in-state witness and voter registration requirement imposed on circulators of referendum petitions seeking to amend home rule charters in the Commonwealth of Pennsylvania state valid claims and should not be dismissed on a 12(b)(6) motion to dismiss.

The in-state witness and voter registration requirements of 53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869 require that the "Affidavit of Circulator" (hereinafter the "Affidavit") on each of Plaintiffs' referendum petition papers must be executed

by a resident of the Commonwealth of Pennsylvania who is also a registered voter

of the Commonwealth. The Affidavit must be completed for each page of the

petition paper before plaintiffs may file them with defendants.  The Affidavit

requires that the "qualified elector" – who must be a resident and registered voter

of the Commonwealth of Pennsylvania –  must attest that he/she has personal

knowledge as to the validity and circumstances of the signatures recorded on the

nomination paper for which the Affidavit is executed.  Accordingly, the challenged

provisions of 53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869 prohibits out-of-state

circulators from circulating referendum petitions out of the sight lines of an in-state

"qualified elector" and resident of the Commonwealth of Pennsylvania – rendering

any assistance of out-of-state circulators to be merely duplicative of in-state

circulator efforts.  The challenged provision flatly prohibits an out-of-state

circulator from validly circulating plaintiff's nomination papers in any geographic

location for which there is no in-state registered circulator able and willing to

partner with the out-of-state circulator.  Furthermore, the challenged provision

flatly limits out-of-state and/or unregistered Pennsylvania circulator participation

to the precise time and convenience of an in-state "qualified elector."  In *Morrill v.

Weaver*, 224 F.Supp.2d 882 (2002), the Commonwealth conceded that although

the in-state witness who executes the Affidavit "does not have to personally gather

the signatures,  . . . he must be present when they are made."  *Morrill*, 224

26

F.Supp.2d at 898.  Furthermore, the Commonwealth retain these requirements in the recent amendments to the Pennsylvania Election Code.  *See*, Def. Exhibi B to their Motion to Dismiss.

In *Meyer v. Grant*, 486 U.S. 414 (1988), the Court struck down Colorado's prohibition on paid petition circulators.  Holding that the restriction was "a limitation on political expression subject to exacting scrutiny" the Court reasoned that the state had failed to justify the burden on advocates' free speech rights. *Meyer*, 486 U.S. at 420.  In *Buckley*, the Court invalidated a requirement that petition circulators be registered voters of the state, holding that the "requirement cuts down the number of message carriers in the ballot-access arena without impelling cause." *Buckley*, 525 U.S. at 197.  Accordingly, the voter registration requirement of 53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869 is flatly black letter law unconstitutional under existing U.S. Supreme Court precedent.

Although *Buckley* expressly reserved the question of whether residency requirements like the one at issue in this action would be unconstitutional, *Buckley*, 525 U.S. at 197, every federal court to address in-state circulator restriction, where the circulators are willing to place themselves under the jurisdiction of the state in which they want to circulate election petitions has expressly relied on *Buckley* and *Meyer* to hold such requirements unconstitutional in the context of both ballot initiative and candidacy petitions.  *See Citizens in Charge v. Gale*, 810 F.Supp.2d

916 (D. Neb. 2011) (invalidating state residency requirement for circulators of

candidacy and ballot initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th

Cir. 2008) (invalidating state residency requirement for circulators of presidential

candidacy petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (same);

*Daien v. Ysursa*, 711 F.Supp.2d 1215 (D. Idaho 2010) (same); *Krislov v. Rednour*,

226 F.3d 851 (7th Cir. 2000) (invalidating residency requirement for circulators of

petition for congressional candidacy petitions); *Libertarian Party of Virginia v.

Judd*, 718 F.3d 308 (4th Cir. 2013) (invalidating state residency requirement for

circulators of candidacy petitions), aff'g 881 F.Supp.2d 719 (E.D. Va. 2012) cert.

denied, 571 U.S. 1071, 134 S. Ct. 681 (Dec. 2, 2013).

Judge Dalzell of the United States District Court for the Eastern District of

Pennsylvania preliminarily and permanently enjoined enforcement of the cognate

in-state witness restriction imposed upon the circulation of nomination papers

pursuant to 25 P.S. 2911(d), as applied to candidates for the Green and Libertarian

parties of Pennsylvania.  *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723

(E.D. Pa. 2015).  On July 1, 2019, Judge Vanessa G. Gilmore of the United States

District Court for the Southern District of Texas, Houston Division, issued a

temporary restraining order against enforcement of the voter registration

requirement for circulators of initiative petitions seeking to place a proposed

ordinance on the Houston general election ballot.  On appeal, the City of Houston

argued that since they no longer intended to enforce what they admitted was an unconstitutional provision the law was a zombie law worthy of dismissal. The Fifth Circuit in rejecting the lower court's dismissal based on mootness rejected Houston's novel argument citing the fact that they attempted to enforce the statute prior to litigation and no policy maker had disavowed enforcement of the challenged statute the future.

More recently, under strict scrutiny analysis, the United States District Court for the Middle District of Pennsylvania held the provision at issue in this action unconstitutional as applied to Plaintiffs for the 2020 Pennsylvania Republican primary election in *Benezet Consulting, LLC. V. Boockvar*, 433 F.Supp.3d 670 (M.D. Pa. 2020). Last month, the United States District Court for the District of Maine, in a 76 page opinion, followed the lead of this court and issued a preliminary injunction enjoining Maine's voter registration and residency requirement for circulators of initiative petitions in Maine. *We the People PAC v. Bellows*, 2021 WL 569039 (D. Maine, Feb. 16, 2021).

As in the cases cited above, the state residency requirement here imposes a severe burden on plaintiffs' First Amendment rights without being narrowly tailored to serve a compelling governmental interest.

1.    **53 Pa.C.S.A. § 2943(a) and  25 P.S. § 2869  Impose a Severe Burden on Political Speech and Must be Reviewed Under a <u>Strict Scrutiny Standard</u>.**

In evaluating the constitutionality of an election law, "the rigorousness of [the court's] inquiry . . . depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  When constitutional rights "are subjected to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance."  Id.  (internal quotation marks and citation omitted).   Based on the Supreme Court's decision  in *Buckley*, a restriction that drastically reduces the number of persons available to circulate petitions imposes a severe burden on First Amendment speech because it reduces or limits the ability to associate with potential supports.  Accordingly, strict scrutiny applies to judicial review of both the voter registration and in-state witness restriction because of the vast number of persons prohibited from circulating referendum petitions in the Commonwealth of Pennsylvania – over 300 million United States residents are prohibited by the challenges statutes from circulating referendum petition in Pennsylvania, and an addition number of unregistered Pennsylvania residents are also prohibited from freely circulating referendum petitions a number which is constitutes a *per se* and unchallengeable severe restriction on rights guaranteed to plaintiffs' under the First and Fourteenth Amendments to the United States Constitution.

First and foremost, the United States Supreme Court expressly applied strict scrutiny on voter registration requirements imposed on the circulation of referendum petitions.  *Buckley*, 525 U.S. at 197.   That, frankly should be the end of the analysis.  As this Court has correctly adjudicated Plaintiffs are likely prevail on the merits their claims, accordingly, dismissal on a 12(b)(6) motion to dismiss is inappropriate with respect to any defendant who is judge by this court to be a proper party to this action.

With respect to the challenged in-state witness restriction, Judge Dalzell in ruling Pennsylvania's in-state witness restriction invalid for the circulation of election petitions for candidates of political bodies in *Green Party of Pennsylvania*, explained that:

> "Our Court of Appeals has not considered the validity of the In-State Witness requirement.  In our July 31, 2014 Order we relied on the reasoning of the Fourth Circuit in *Judd* and held such residency requirements unconstitutional.  We do so again here.

> We apply the strict scrutiny standard because the character and magnitude of the asserted injury outweighs the Commonwealth's interests as a justification for the burden it imposes.  The Commonwealth's residency requirement is not narrowly tailored to advance a state interest of compelling importance.  'As the law has developed…, a consensus has emerged that petitioning restrictions like the one at issue here are subject to strict scrutiny analysis.'"

*Green Party of Pennsylvania*,  89 F.Supp.3d at 740 *citing Judd*, 718 F.3d at 316-17.

## 2.   Defendants Cannot Save the Voter Registration and Residency Requirements from Strict Scrutiny Analysis.

Because the in-state witness and voter registration requirements on executing the Affidavit imposes a severe burden on First Amendment rights, strict scrutiny applies to this Court's review of the challenged statute.  Once this Court determines political speech has been burdened and that strict scrutiny must be applied; it is presumed that the law, or regulation, or policy is unconstitutional. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  The government then has the burden to prove that the challenged law is constitutional.  *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 450-51 (2007).  To withstand strict scrutiny, the government must prove that the law is necessary to achieve a compelling governmental interest.  *Id*.  If this is proved, the state must then demonstrate that the law is also narrowly tailored to achieve the asserted interest. *Id*.

To the extent that the in-state witness and voter registration requirements serve any compelling governmental interest, the restriction is not narrowly tailored to advance that interest.  Defendants must show that the challenged restrictions are no broader in scope or burdensome than necessary to achieve its purpose.  *Brewer*, 531 F.3d at 1037; *Krislov*, 226 F.3d at 863.  Defendants cannot show that allowing non-residents of the Commonwealth or unregistered residents of Pennsylvania to circulate referendum petitions free from the supervision of an in-state registered

resident would increase the instances of fraud.  To establish the need to regulate non-resident circulators, defendants must prove that non-residents and/or unregistered voters of Pennsylvania are more likely to commit fraud then residents. However, multiple federal courts have rejected the idea that a non-resident circulators are inherently less honest.  *See, e.g.*, *Meyer*, 486 U.S. at 426; *Brewer*, 531 F.3d at 1037; *Yes on Term Limits v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008). No federal court has ever accepted that a circulator's voter registration status implicates suspicion of honesty.

## IV.   **CONCLUSION**

For all the foregoing reasons, Defendants' motions to dismiss should be denied.

Respectfully submitted,

Dated:  March 1, 2021           **/s/ Lawrence Otter**_____
Larry Otter
*Counsel for Plaintiffs*
P.O. Box 575
Silverdale, PA  18962
(267) 261-2948
larryotter@hotmail.com


**/s/ Paul A. Rossi**_____
Paul A. Rossi, Esq.
PA I.D. 84947
*Admitted Pro Hac Vice*
IMPG Advocates
316 Hill Street
Mountville, PA  17554
(717) 681-8344

Paul-Rossi@comcast.net

Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

Plaintiffs, by and through their undersigned legal counsel hereby certify that they caused a true and correct copy of the foregoing document to be served on all defendants, through their legal counsel, through the Court's ECF filing system.

Dated:  March 1, 2021                    __/s/ **Lawrence Otter**_____
                                         Larry Otter
                                         *Counsel for Plaintiffs*