**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OPENPITTSBURGH.ORG and TRENTON POOL, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:16-cv-01075 |
| v. | ) | |
| | ) | |
| DAVID VOYE, in his official capacity as the Manager of the Allegheny County Division of Elections, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

**Mark R. Hornak, Chief United States District Judge**

Presently before the Court are Defendants' reaffirmed motions to dismiss Plaintiffs' Third Amended Complaint ("TAC") (ECF No. 86) seeking declaratory and injunctive relief prohibiting Defendants from "enforcing 53 Pa. C.S.A. § 2943(a) of the Pennsylvania Home Rule & Optional Plan Law . . . to the extent it incorporates 25 P.S. § 2869 of the Pennsylvania Election Code on the circulation, signing, filing and adjudication of petitions to place a referendum question on" Pittsburgh's 2021 or 2022 general election ballot. (ECF No. 86, at 2.) Plaintiffs challenge the constitutionality of these laws, facially and as applied to Plaintiffs, to the extent these provisions prohibit "unregistered Pennsylvania voters from freely circulating referendum petitions under 53 Pa. C.S.A. § 2943(a)"; to the extent the provisions prohibit "non-Pennsylvanians from freely circulating referendum petitions under 53 Pa. C.S.A. § 2943(a)"; and finally, to the extent these provisions require "Plaintiffs to notarize each and every page of referendum petitions circulated and filed under 53 Pa. C.S.A. § 2943(a)."[1] (*Id.*)

---

[1] As the Court explains below, the claims based on the notarization requirement are now moot.

Pursuant to 42 U.S.C. § 1983, Plaintiffs bring six federal constitutional challenges: (1) Count I of Plaintiffs' TAC raises facial constitutional challenges to the Pennsylvania Home Rule and Optional Plan Law ("Home Rule Law"), 53 Pa. C.S.A. § 2943(a), and Pennsylvania's Election Code ("Pennsylvania Election Code" or "Election Code"), 25 P.S. § 2869, arguing that the voter registration requirement for circulators of referendum petitions under these sections is a facial impairment to Plaintiffs' rights guaranteed under the First and Fourteenth Amendments of the Constitution;[2] (2) Count II raises an as-applied constitutional challenge to the same voter registration requirement, alleging violations of Plaintiffs' First and Fourteenth Amendment rights; (3) Count III raises a facial constitutional challenge to the Home Rule Law and Election Code's restriction on out-of-state circulators of referendum petitions, arguing that the restriction is a facial impartment of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments;[3] (4) Count IV is an as-applied challenge to the same out-of-state circulator restriction, alleging violations of Plaintiffs' First and Fourteenth Amendment rights; (5) Count V raises a facial constitutional challenge to the Home Rule Law and Election Code's requirement that Plaintiffs notarize every page of a referendum petition, arguing that the notarization requirement facially impairs the rights guaranteed to Plaintiffs under the First and Fourteenth Amendments; and (6) Count VI raises an as-applied constitutional challenge to the same notarization requirement, alleging violations of Plaintiffs' First and Fourteenth Amendment rights.

---

[2] Throughout this Opinion, the Court also refers to this provision of the Home Rule Law and Election Code as the "voter registration requirement provision."

[3] Throughout this Opinion, the Court also refers to this provision of the Home Rule Law and Election Code as the "out-of-state circulator restriction" or "ban."

The Secretary of the Commonwealth[4] and the group of County Defendants[5] each move to dismiss Plaintiffs' claims in their entirety. The County Defendants move to dismiss Plaintiffs' TAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for want of justiciability and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Without citing to a specific provision of Rule 12, the Commonwealth generally moves to dismiss for lack of standing and for failure to state a claim specifically against the Secretary.

For the reasons that follow, the Court denies the Secretary and the County Defendants' respective motions to dismiss. To the extent Plaintiffs raise facial and as-applied constitutional challenges to the Home Rule Law and Election Code's requirement that Plaintiffs notarize every page of a referendum petition (Counts V and VI of Plaintiffs' TAC), the Court dismisses these claims without prejudice as moot, as conceded by the parties in light of the passage of Act 77 of 2019. Moreover, the Court denies both motions to dismiss to the extent they seek to dismiss Plaintiffs' claims on justiciability grounds, as the Court concludes that Plaintiffs have standing and that their claims are ripe. Although not directly raised by Defendants, the Court *sua sponte* concludes that the "capable of repetition yet evading review" exception applies to eliminate any mootness concerns as to such claims. Finally, the Court denies Defendants' respective motions to dismiss to the extent the County Defendants argue that Plaintiffs have failed to plausibly allege liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and to the extent

---

[4] The Court refers to this Defendant as the Secretary of the Commonwealth, the Commonwealth, and the Secretary interchangeably.

[5] Plaintiffs name the following election officials of Allegheny County as Defendants: David Voye (as Manager of the Allegheny County Division of Elections), Kathryn M. Hens-Greco (as an interim member and President of the Allegheny County Board of Elections), Thomas Baker (as a member of the Allegheny County Board of Elections), and Robert Palmosina (as a member of the Allegheny County Board of Elections), all in their official capacities. The Court hereinafter refers to these Defendants collectively as the "County Defendants."

that the Court rejects the Commonwealth's proposed statutory interpretation of 53 Pa. C.S.A. § 2943(a).

## I.      **PROCEDURAL BACKGROUND**

The parties are well versed in the lengthy procedural history of this case, so the Court recites only the relevant procedural background here. On October 29, 2019, Plaintiffs filed their TAC seeking injunctive and declaratory relief against all Defendants. (ECF No. 86.) In November 2019, the Secretary of the Commonwealth moved to dismiss all of Plaintiffs' claims against it (ECF Nos. 94 and 95), which Plaintiffs opposed at ECF No. 99. The Commonwealth thereafter replied at ECF No. 100. In December 2019, the County Defendants filed their respective Motion to Dismiss, also seeking dismissal of all claims raised against them. (ECF No. 93.)

In a Joint Status Report filed on March 5, 2021, the parties represented to the Court that they believed the matter could "be resolved without further litigation through an agreed upon order." (ECF No. 105, at 1.) The Court accordingly stayed and administratively closed this case pending an entry of final case resolution orders, which the parties represented they would file on or before March 18, 2020. (ECF No. 106.) In the months that followed, the parties did not resolve the case through an agreed-upon order. Instead, it became clear that settlement negotiations had broken down following what appears to the Court to be a disagreement as to who would bear the cost of attorneys' fees. (*See* ECF Nos. 107, at 4–6; 109, at 3; and 110, at 4–6.) The Court thereafter held a telephone status conference with counsel, after which the Court directed the parties to further confer and file reports as to the current status of the action. (ECF No. 117; *see* ECF Nos. 120, 122, and 124.)

Following those additional status reports, the Secretary of the Commonwealth ultimately notified the Court of her intent to proceed with the pending motions to dismiss. (ECF No. 127, at

2.) The County Defendants filed a separate status report in which it affirmed its "legal ambivalence" regarding the merits of the action and asserted its interest in having the law settled, "so that it can apply the law fairly and accurately in upcoming actions and [] avoid being found liable to pay fees and costs regarding matters over which it has no control or discretion." (ECF No. 126, at 2–3.) In light of that change of course, the Court held a status conference with all parties to understand the "precise procedural and substantive status of the action, the matters that remain to be resolved on the merits, the procedure they propose for doing such, and their proposed timeline for doing so." (ECF No. 129.)

Following the status conference, the Court ordered the Commonwealth and the County Defendants to either file new Rule 12 motions, notices reaffirming the motions to dismiss then on the docket, or answers to the TAC. (ECF No. 131.) The County Defendants reaffirmed their Motion to Dismiss (ECF Nos. 75 and 93) and added supplemental arguments for the Court's consideration in their supplemental motion (ECF Nos. 133 and 134). The Secretary of the Commonwealth notified the Court that it opted to "reaffirm the motion to dismiss presently on the docket" (ECF Nos. 94 and 95), "as supplemented by her Reply Brief" (ECF No. 100) and "her Status Report" (ECF No. 110). (ECF No. 135, at 3.) Finally, Plaintiffs filed an additional consolidated response to Defendants' motions to dismiss. (ECF No. 136.) With that, the record is now closed, and Defendants' respective motions to dismiss are ripe for disposition.

## II.   FACTUAL BACKGROUND[6]

Plaintiffs filed this civil rights action pursuant to 42 U.S.C. § 1983, "seeking prospective equitable relief enjoining enforcement and declaring that certain of the combined requirements of 53

---

[6] The facts are taken from the allegations of Plaintiffs' TAC, which the Court must generally accept as true for the purposes of ruling on the pending motions to dismiss. *Blanyar v. Genova Products, Inc.*, 861 F.3d 426, 431 (3d Cir. 2017).

Pa. C.S.A. § 2943(a) and 25 P.S. § 2869 impair[] clearly established rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution." (ECF No. 86, ¶ 4.)

Plaintiff OpenPittsburgh.Org is "an unincorporated grass-roots political organization that intends to circulate referendum petitions . . . to place a referendum on the [] Pittsburgh general election ballot,"[7] though which OpenPittsburgh.Org seeks to "amend the Allegheny County Home Rule Charter changing the composition and qualification of members who may serve on the Allegheny County Board of Elections." (*Id.*¶ 12.) Plaintiff Trenton Pool, a resident of the state of Texas, is a "professional circulator of election and referendum petitions" who, via his consulting firm, has contracted with OpenPittsburgh.Org to collect several thousand signatures to place a referendum question on the upcoming general election ballot. (*Id.* ¶¶ 16–17.) Defendants are (1)

---

[7] The specific general election, *e.g.*, the year, in which Plaintiffs intend to circulate a referendum petition has shifted during the course of this litigation.

Plaintiffs filed their TAC in October 2019, at which point Plaintiffs intended to circulate and file referendum petitions in advance of the "2020 Pittsburgh general election ballot." (ECF No. 86, ¶ 12.) In early March 2020, shortly after initial motion to dismiss briefing began in the case, the parties represented that they could resolve the case without the Court's involvement. The Court thus temporarily stayed the case. By the time the parties indicated their intent to proceed with the pending motions to dismiss, the COVID-19 pandemic had arrived, which caused additional unforeseen delays through no fault of any party, such that the justiciability of Plaintiffs' claims arising out of the referendum petition process relating to the 2020 general election ballot was called into question. (See ECF Nos. 112, 113, and 114.) Settling the justiciability issue raised, Plaintiffs explained that it would be nearly impossible for the Court to adjudicate all pending motions to dismiss, permit the parties to proceed with discovery, and issue an Order on anticipated cross-motions for summary judgment prior to the deadline to file the referendum petitions for the 2020 general election. (ECF No. 114.) Thus, Plaintiffs explained that they instead intended to circulate a referendum petition in the 2021 general election as opposed to the 2020 general election as originally pled. (*Id.*)

The case thus proceeded, and Defendants reaffirmed and supplemented the operative motions to dismiss. The motions became ripe for the Court's review in early March 2021, when Plaintiffs filed a consolidated brief in opposition to Defendants' reaffirmed and supplemented motions to dismiss. In their briefing, Plaintiffs indicated their intent to submit referendum petitions in (a) the 2021 general election or (b) the 2022 general election ballots, pointing to the impacts the COVID-19 pandemic had on the basic functions of grassroots organizing. (*Id.*) At that point in time, the Court took the motions under advisement. Since then and while the motions to dismiss were still under consideration, the deadline to submit the referendum petitions for the 2021 Pittsburgh general election ballot passed in early August 2021.

As the Court explains in a later section of this Opinion, the Court concludes that Plaintiffs' claims are subject to the "capable of repetition yet evading review" exception to the mootness doctrine. For the purposes of adjudicating Defendants' motion to dismiss Plaintiffs' TAC, the Court accordingly addresses Plaintiffs intent to participate and circulate referendum petitions for the 2022 Pittsburgh general election ballot.

members of the Allegheny County Division of Elections and Board of Elections, whom this Court refers to as the County Defendants, and (2) the acting Secretary of the Commonwealth of Pennsylvania.[8] (*Id*. ¶¶ 18–22.)

Plaintiffs bring this action against the County Defendants and the Secretary of the Commonwealth in their official capacities only. County Defendant David Voye is the Manager of the Allegheny County Division of Elections and is charged with enforcing the challenged statutory provisions "by either accepting or rejecting Plaintiffs' referendum petitions as provided by law," rejecting those "where the 'Affidavit of Circulator' is not executed by a registered Pennsylvania voter." (*Id*. ¶ 18.) Other members of the Allegheny County Board of Elections named in Plaintiffs' TAC are also alleged to be charged "with enforcing the statutes challenged in this action." (*Id*. ¶¶ 19–21.) As for the Commonwealth, Plaintiffs sue the Secretary in her official capacity, alleging that the Secretary is the "chief election official and has ultimate authority over the enforcement of the Pennsylvania Election Code and, more specifically, the challenged provisions of 25 P.S. § 2869" that Plaintiffs assert are incorporated in 53 Pa. C.S.A. § 2943(a). (*Id*. ¶ 22.)

The Pennsylvania Home Rule and Optional Plan Law, 53 Pa. C.S.A. § 2943(a), "authorizes citizens who are residents in municipalities . . . to place certain binding referendum questions amending the municipal charter on the ballot." (*Id*. ¶ 23.) "OpenPittsburgh.Org intends to circulate and file petitions to amend the Allegheny Home Rule Charter to amend the composition and qualifications of members who may serve on the Allegheny County Board of Elections." (*Id*. ¶ 25.) According to 53 Pa. C.S.A. § 2943(a),[9] "OpenPittsburgh.Org needs approximately 22,652

---

[8] Plaintiffs' TAC states that it brings its claims against the named Defendants and their successors in interest.

[9] 53 Pa. C.S.A. § 2943(a) provides:

> A petition containing a proposal for referendum on the question of amending a home rule charter or an optional plan of government signed by electors comprising 10% of the number of electors voting for the office of Governor in the last gubernatorial general election in the municipality or an

valid signatures of electors to place [its] proposed referendum question on the [] Allegheny County general election ballot." (*Id*. ¶ 37.) Plaintiffs allege that the "circulation, signing, filing, and adjudication of referendum petitions are . . . governed by 25 P.S. § 2869's provisions governing partisan nominations," the most recently amended version of which provides:

> Each sheet [containing the nomination petition of signers resident in a particular county] shall have appended thereto the statement of the circulator of each sheet, setting forth, subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities)--(a) that he or she is a qualified elector of the Commonwealth, who is duly registered and enrolled as a member of the party designated in said petition, unless said petition relates to the nomination of a candidate for a court of common pleas, for the Philadelphia Municipal Court or for justice of the peace, in which event the circulator need not be a duly registered and enrolled member of the designated party; [and] (b) his residence, giving city, borough or township, with street and number, if any [among other required information] . . . .

(*Id*. ¶ 40.)

Plaintiffs allege that the combined effect of 53 Pa. C.S.A. § 2943(a) and 25 P.S. § 2869 means that the referendum petitions OpenPittsburgh.Org intends to circulate "may not be freely circulated by either: (1) unregistered Pennsylvania citizens; or (2) out-of-state residents, regardless of their registration status, because only registered voters may execute the 'Affidavit of Qualified Elector.'"[10] (*Id*. ¶ 41.) Moreover, "Defendants are authorized to strike and refuse the filing of any referendum petition when an 'Affidavit of Qualified Elector' is executed by anyone who is not a

_____

ordinance of the municipal governing body proposing amendment of a home rule charter or an optional plan shall be filed with the election officials not later than the 13th Tuesday prior to the next primary, municipal or general election. The petition and the proceedings therein shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing and adjudication of nomination petitions insofar as such provisions are applicable, except that no referendum petition shall be signed or circulated prior to the 20th Tuesday before the election nor later than the 13th Tuesday before the election. The name and address of the person filing the petition shall be clearly stated on the petition.

[10] Throughout their TAC, Plaintiffs refer to the "Affidavit of Circulator" or "Affidavit of Qualified Elector." After Plaintiffs filed their TAC, Act 77 of 2019 eliminated the affidavit/notarization requirement of 25 P.S. § 2869, instead requiring only a "statement of the circulator." When the Court refers to Plaintiffs' pleadings where they discuss the "Affidavit of Circulator" or "Affidavit of Qualified Elector," it treats this reference as synonymous with the now updated language and effect of the Pennsylvania Election Code.

registered elector of the Commonwealth of Pennsylvania." (*Id*. ¶ 43.) Plaintiffs contend that the combined effect of these provisions creates a burdensome process whereby "unregistered Pennsylvania residents and out-of-state circulators [must] team up with registered Pennsylvania voters who must tag along and 'witness' the signatures recorded on the referendum petitions." (*Id*. ¶ 42.) To comply with Pennsylvania's Election Code as set forth above and collect the necessary number of signatures to secure OpenPittsburgh.Org's access to the general election ballot, Plaintiffs allege that they have to "raise sufficient funds to successfully circulate petitions to place the Proposed Amendment" on the general election ballot. (*Id*. ¶ 27.)

To that same end, OpenPittsbrugh.Org wants to utilize Trenton Pool's services as a professional referendum petition circulator to assist in collecting the required number of signatures. (*Id*. ¶ 15.) However, Plaintiffs allege that due to Pennsylvania's "prohibition on non-Pennsylvania residents or unregistered Pennsylvania residents from executing the 'Affidavit of Circulator' made part of each referendum petition, Plaintiff Pool is not able to freely circulate referendum petitions for Plaintiff OpenPittsburgh.Org." (*Id*. ¶ 17.) Plaintiffs note that the only way OpenPittsburgh.Org can secure ballot access "in the most economically efficient manner possible" is to "contract with Trenton Pool and other out-of-state circulators and unregistered Pennsylvania residents, such as college students, to collect the required number of valid signatures," but the election statutory provisions at the center of this litigation prevent OpenPittsburgh.Org from utilizing these resources. (*Id*. ¶ 33.) Regarding college students specifically, Plaintiffs explain that if "local college students who are registered to vote in a different state []wish to circulate Plaintiff OpenPittsburgh.Org's referendum petition[, they] must be accompanied by a Pennsylvania registered voter willing to follow the unregistered circulator around while he/she circulates the petition." (*Id*. ¶ 50.) In sum, Plaintiffs contend that "the economic cost imposed on OpenPittsburgh.Org of having to comply with

the voter registration and out-of-state circulator bans challenged in this action continue to threaten the ability of OpenPittsburgh.Org to be able to afford future petition drives necessary to secure ballot access for [the organization's] open government agenda through referendum petitions." (*Id.* ¶ 35.)

Based on the foregoing, Plaintiffs allege that the "registered voter requirement and the out-of-state circulator restriction imposed by 25 P.S. § 2869" and 53 Pa. C.S.A. § 2943(a) are not "narrowly tailored to effectuate a compelling state interest" because "there is no regulatory interest advanced" by these requirements sufficient to justify the severe limitations the provisions impose on "a circulator's ability to advance and spread the message of" OpenPittsburgh.Org. (*Id.* ¶¶ 44–46.) Plaintiffs contend that these restrictions caused by the Home Rule Law and Election Code, taken together, place "a severe burden on the First Amendment speech of OpenPittsburgh.Org by making it more difficult for it to disseminate its political views, [to] choose the most effective meaningful way of conveying its message, to associate in a meaningful way with prospective circulators of its referendum petition for the purpose of eliciting political change, to gain access to the general election ballot, and to utilize the public endorsement of circulators which can be implicit in a circulator's efforts to gather signatures on OpenPittsburgh.Org's behalf." (*Id.* ¶ 58.) Accordingly, Plaintiffs "ask this Court for preliminary and permanent injunctions enjoining Defendants from rejecting any referendum petition authorized to be circulated under 53 Pa. C.S.A. § 2943(a) where the referendum petition's 'Affidavit of Qualified Elector' has been executed by: (a) an unregistered qualified elector of the Commonwealth of Pennsylvania; or (b) a resident of another state and citizen of the United States willing to consent to the jurisdiction of the Commonwealth of Pennsylvania for purposes of investigation related to the circulation, signing and filing of referendum petitions." (*Id.* ¶ 5.) Plaintiffs also ask this Court to declare those provisions of 53 Pa. C.S.A. § 2943(a) and 25 P.S. § 2869 unconstitutional. (*Id.* ¶ 6.)

### III.    LEGAL STANDARD

#### A.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A motion to dismiss for want of standing is [] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

In evaluating a challenge to subject matter jurisdiction under Rule 12(b)(1), a court first must determine whether the movant presents a facial or a factual attack. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). The distinction is important because it determines how the court must review the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*, 824 F.3d at 346 (citation omitted). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (citation omitted) (alteration in original). Here, both the Secretary of the Commonwealth and the County Defendants assert a facial challenge because they contend that the allegations of Plaintiffs' TAC, even accepted as true, are insufficient to establish Article III standing. (ECF Nos. 93 and 95.)

In considering a facial challenge to standing, courts are to apply the same standard as on review of a Rule 12(b)(6) motion for failure to state a claim. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) (explaining "that the standard is the same when considering a

facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6)" (citation omitted)).

## B.  Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court's decision in *Ashcroft v. Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, under Rule 12(b)(6), the plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

Our Court of Appeals has broken the *Iqbal* and *Twombly* pleading standard into a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Along the same lines, the Third Circuit has held that the complaint must "show" that the plaintiff is entitled to relief based on the facts that the Court must presume as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

In light of Defendants' facial attack on the justiciability of Plaintiffs' claims, the Court will review Plaintiffs' TAC and Defendants' Rule 12(b)(1) jurisdictional challenges through the lens of a 12(b)(6) motion to dismiss for failure to state a claim. The Court will then turn to Defendants' remaining contentions unrelated to justiciability.

IV.     **DISCUSSION**

The Court first addresses Plaintiffs' claims at Counts V and VI, which have been mooted due to a statutory amendment to 25 P.S. § 2869 that occurred after Plaintiffs filed their TAC. Second, the Court addresses the various justiciability issues raised by Defendants. Finally, the Court addresses the other arguments raised by Defendants via their motions to dismiss.

A.     **Counts V and VI: Plaintiffs' Claims for Relief Relative to Pennsylvania Election Code's Former Notarization Requirement for Referendum Petitions Filed Under the Home Rule Law Are Moot**

The Court first concludes that Plaintiffs' claims at Counts V and VI of the TAC, raising facial and as-applied constitutional challenges to 25 P.S. § 2869's requirement that Plaintiffs notarize every page of a referendum petition filed pursuant to 53 Pa. C.S.A. § 2943(a), are moot following the passage of Act 77 of 2019. Act 77 of 2019, which became law after Plaintiffs' filed the TAC, eliminated the notarization requirement for referendum petitions filed under 53 P.S. § 2943(a). Specifically, Act 77 of 2019 removed the term "affidavit" from its language, which means that the circulator need only attach a statement of the required information made "subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities)." *See* 25 P.S. § 2869 (as amended 2019). In Plaintiffs' oppositional briefing (ECF Nos. 99 and 136), Plaintiffs concede that "the Commonwealth's recent amendment of the Election Code to remove the requirement that political party nomination petitions . . . must be notarized renders Plaintiffs' constitutional challenge to the notarization requirement of petitions to amend Home Rule Charters in this action moot."[11] (ECF No. 136, at 22.) Because of this intervening change in Pennsylvania law, the Court agrees that Plaintiffs' challenge to the notarization requirement is now moot. *See Khodara Environ., Inc. ex rel. Eagle Environ., L.P. v. Beckman*, 237 F.3d 186,

---

[11] Moreover, at a status conference with the Court on August 27, 2020, Plaintiffs stipulated that the Court could enter an order dismissing without prejudice Plaintiffs' claim for relief relative to the notarization requirement.

194 (3d Cir. 2001) ("Where a law is amended so as to remove its challenged features, the claim

. . . becomes moot as to those features.") (internal quotation marks omitted) (quoting *Naturist*

*Soc., Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992)). Accordingly, Count V and Count

VI of the TAC are dismissed without prejudice.

### B. Justiciability: Whether Defendants Are Proper and Necessary Parties to this Action

As a threshold justiciability issue, both the Commonwealth and the County Defendants

move to dismiss the remaining claims for relief raised in Plaintiffs' TAC on the grounds that they

are not necessary or proper parties to this suit and should thus be dismissed from this action. The

Court summarizes and addresses each party's argument in turn.

#### 1. The Commonwealth's Argument

The Commonwealth argues that where a plaintiff fails to identify the specific conduct of a

particular defendant, the plaintiff does not meet the pleading requirements imposed by the Federal

Rules of Civil Procedure, *Iqbal*, and *Twombly*. Accordingly, the Commonwealth argues that

"Plaintiffs' reliance on repeated, generic references to the 'Defendants' collectively throughout

the allegations of their Third Amended Complaint, without differentiation as to particular acts or

omissions of each respective defendant . . . is fatal to their efforts to state a claim against any

Defendant, including [the] Secretary." (ECF No. 95, at 8.)

In opposition, Plaintiffs argue that the Secretary of the Commonwealth is a proper and

necessary party to this action. (ECF No. 136, at 12.) Plaintiffs point to recent litigation in which

the Secretary has actively opposed challenges to set aside the same voter registration and residency

requirements at issue in this litigation. (*Id.* at 12–14.) In essence, Plaintiffs argue that the Secretary

of the Commonwealth is "routinely accepted as a proper party to a constitutional challenge to a

state imposed ballot access restriction." (*Id*. at 13–14.) Moreover, Plaintiffs assert that the "mere

fact that the Commonwealth has delegated the filing home rule charter amendment petitions with the local jurisdiction, does not divorce the Commonwealth or the Secretary of State . . . from ultimate responsibility for the voter registration and residency requirement that local officials are required to enforce." (*Id.* at 15.)

### 2. **The County Defendants' Argument**

The County Defendants argue that Plaintiffs cannot establish "an injury attributable to or causally connected to the actions of the County Defendants" because the County, as a "home rule unit[] of local government," "lacks any legal authority whatsoever with respect to conduct of elections," and its duties are "ministerial and allow for no exercise of discretion." (ECF No. 93, at 16–17.) As such, the County Defendants assert that "Allegheny County and its election officials . . . cannot create [their] own election forms with County-dictated content but must follow the provisions governing election processes . . . set forth in the Pennsylvania Election Code as advised by the Secretary of the Commonwealth." (*Id.* at 17.) Specifically, they point to the Pennsylvania Election Code, which they contend indisputably places legal responsibility on the Secretary "to determine the form of nomination petitions and papers, expense accounts and other forms and records." (*Id.* at 18 (citing 25 P.S. § 2621(a)).) In sum, the County Defendants argue that they are not necessary parties for any relief sought because, by statute, they cannot be the source of any harm to Plaintiffs. (*Id.* at 18.)

In opposition, Plaintiffs argue that the County Defendants, like the Secretary of the Commonwealth, are proper parties to this lawsuit "because they are charged by the Commonwealth to enforce the challenged statute," and they "exercise their authority as officials of the board of elections for Allegheny County." (ECF No. 136, at 11.) Plaintiffs argue that as

such, the County Defendants "cannot be heard to complain that they have no role on enforcing the challenged provisions." (*Id*.)

     **3.**   <u>**The Commonwealth and County Defendants Are Proper and Necessary Parties to this Action**</u>

       The Court is unpersuaded by the Commonwealth's or the County Defendants' arguments that they are not the proper or necessary parties to this suit. The Court observes that, to some extent, the parties have resorted to pointing fingers as an argument that liability rests with another entity. This argument is irrelevant to the present inquiry before the Court. In assessing whether a party is necessary and proper to an action, the Court is *not* charged with determining "the most suitable defendants," but rather, the Court must "decide whether the complaint has named defendants who meet the prerequisites to adjudication in a federal court." *Finberg v. Sullivan*, 634 F.2d 50, 53 (3d Cir. 1980) (discussing *Ex Parte Young*, 209 U.S. 123, 157 (1908)). *Ex Parte Young* and its progeny in the Third Circuit make plain that "a particular official [will be] properly named as a defendant if the official 'by virtue of his office has some connection with the enforcement of the act.'" *Id*. at 54 (quoting *Ex Parte Young*, 209 U.S. at 157).

       To determine whether an official has a "some connection" with the enactment or enforcement of an allegedly unconstitutional law, the Third Circuit has instructed that "the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Id*. In establishing this test, the Third Circuit relied heavily on the Supreme Court's decision in *Ex Parte Young*, summarizing the relevant facts and holding of that case as follows: "[t]he state official sued in *Ex Parte Young* was the attorney general, and he had a sufficient 'connection' with the enforcement of the challenged law" to then be called into federal court to defend its constitutionality. *Id*. The challenged law in *Ex Parte Young* "set maximum rates for railroads . . . and [t]he Court reasoned that [the defendant's responsibilities as attorney general]

made him personally a party to the controversy over the law's enforcement because his bringing of a civil enforcement action against a violator" would directly infringe on the violator's rights if that law was later adjudicated to be unconstitutional. *Id*. By contrast, the Third Circuit explained the Supreme Court has not allowed suit "against state officials who had no responsibilities to take any personal actions to enforce or execute a law alleged to be unconstitutional." *Id*. (discussing *Fitts v. McGhee,* 172 U.S. 516, 529–30 (1899)).

Applying these principles, the Third Circuit in *Finberg* reasoned that "the duties of the prothonotary and the sheriff," the state officials at issue, "in connection with [a] postjudgment garnishment procedure"—the law being challenged as unconstitutional—"consist[ed] of issuing [a] writ of execution and serving it on the garnishee." *Id*. The Third Circuit held that if it turned out that the rules they were executing were, in fact, unconstitutional, then the state officials' "actions caused an injury to [the plaintiff's] legal rights," thereby satisfying the "some connection" test. *Id.* The Third Circuit also explained that the "only other Pennsylvania officials who might be said to have an interest in this constitutional challenge to Pennsylvania's postjudgment garnishment rules are the officials who promulgated them," and proceeding without those officials, even if feasible to join them, would still allow the plaintiff "all of the relief that she sought" if the actions she challenged were declared unconstitutional. *Id*. at 55.

Here, the Court concludes that the Secretary of the Commonwealth has a sufficient connection with the enforcement of the challenged election provisions at issue here to be considered a necessary and proper party. Unlike the state officials sued in *Fitts*, who held no "special relation to the particular statute alleged to be constitutional," 172 U.S. at 530, the Secretary of the Commonwealth, Plaintiffs have alleged,  has statutorily prescribed personal responsibilities to enforce or execute the law that Plaintiffs assert is unconstitutional, and that

alongside the County Defendants, the Secretary has, in essence, enforced that law, requiring the election officials to impose a voter registration requirement and prohibit out-of-state circulators.[12] (*E.g.*, ECF No. 86, ¶¶ 74–75.) Specifically, the Court observes that the Secretary is personally charged with "determin[ing] . . . the forms of nomination petitions and papers," 25 P.S. § 2621(a), which the Court concludes sufficiently relates to the Plaintiff's constitutional challenge to 25 P.S. § 2869's limitations and restrictions on who may file or circulate referendum petitions and how they may file said referendums under the Home Rule Law. Like the situations presented in *Ex Parte Young* and *Finburg*, the Court concludes that if § 2869 were to be deemed unconstitutional, it can be fairly said that the Secretary of the Commonwealth's promulgation of the referendum requirements directly harmed Plaintiffs' constitutional rights. Accordingly, the Secretary of the Commonwealth is a necessary and proper party to this action.

As for the County Defendants, the Court likewise concludes that they are necessary and proper parties to this action. The Third Circuit in *Finberg* held that even where officials' duties are purely ministerial, they cannot evade liability when they are charged with enforcing an allegedly unconstitutional law. *Finberg*, 634 at 54 (explaining that the fact that "the duties of the prothonotary

---

[12] The Secretary's argument that it should be dismissed because Plaintiffs' allegations against it are too generic and nonspecific do not carry the day. In their TAC, Plaintiffs not only point to the Secretary's role as "chief election official" with "ultimate authority over the enforcement of the Pennsylvania Election Code," but they also cite specifically to the Secretary's authority set forth in 25 P.S. § 2869. (ECF No. 86, ¶¶ 22, 43.) Plaintiffs allege that "the combined effect of" 53 P.a. C.S.A. § 2943(a) and 25 P.S. § 2869, a provision directly attributed to the Secretary, means that Plaintiffs intended referendum petitions may not be circulated by "(1) unregistered Pennsylvania citizens; or (2) out-of-state residents, regardless of their status[.]" (*Id.* ¶ 41.) Plaintiffs argue that "Defendants enforcement of 53 Pa. C.S.A. § 2943(a) and 25 P.S. § 2869" is the "direct and proximate cause of the impairment of rights guaranteed to Plaintiffs under the First Amendment." (*E.g.*, *id.* ¶ 77.)

The argument that Plaintiffs claims must fail because they do not delineate the exact roles each Defendant played in enforcement of these statutes does not mean Plaintiffs have failed to state a claim, especially when Plaintiffs' theory of liability is grounded in the combined effect of these statutory provisions. The Court concludes that these allegations, and the reference to Defendants in the plural form, do not sink Plaintiffs' TAC. Rather, the Court concludes that the TAC's allegations place the Secretary on notice as to the law(s) being challenged and that Plaintiffs' claims are based on the Secretary's role as the chief election official and her specific duties proscribed by the Pennsylvania Election Code.

and the sheriff are entirely ministerial" did not change the court's conclusion that they were proper and necessary parties). In fact, the Third Circuit noted that "courts often have allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws." *Id.* (citing *Powell v. McCormack*, 395 U.S. 486, 494 (1969); *Ackies v. Purdy*, 322 F. Supp. 38, 40 (S.D. Fla. 1970); *Rodriguez v. Swank*, 318 F. Supp. 289, 297 (N.D. Ill. 1970) (three-judge court), *aff'd mem.,* 403 U.S. 901 (1971)). The County Defendants' continued assertion that they cannot be held liable for enforcing an allegedly unconstitutional law because their duties are purely ministerial is an argument that prevailing law rejects. And the Court rejects that argument here. Just as the Third Circuit in *Finberg* reasoned, if a court were to conclude that the County Defendants were executing "an unconstitutional law," the County Defendants' exercise of their duties would logically have directly "caused an injury to" Plaintiffs' rights, sufficient for this Court to conclude that there is a connection between the County Defendants and the enforcement of the allegedly unconstitutional laws.[13] Accordingly, the County Defendants are proper and necessary parties to this suit.

### C.  Justiciability: Whether Plaintiffs Satisfy the Elements of Standing and Ripeness

Pursuant to Federal Rule of Civil Procedure 12(b)(1), both Defendants move to dismiss Plaintiffs' TAC on the grounds that Plaintiffs lack standing. The County Defendants additionally argue that Plaintiffs' claims fail for lack of ripeness. The Court summarizes and addresses the parties' arguments in turn.

---

[13] Moreover, as pointed out by Plaintiffs, both the County Defendants and the Secretary of the Commonwealth have actively defended litigation before this Court and our Court of Appeals and have not been dismissed as improper or unnecessary parties. The track record of litigation against the County Defendants and the Commonwealth would suggest that they are proper parties to this lawsuit. *See Green Party of Pa. v. Aichele,* 89 F. Supp. 3d 723 (E.D. Pa. 2015) (Secretary opposed as-applied constitutional challenge to residency requirement for circulators of nomination papers for third party and independent candidate ballot access); *Benezet Consulting, LLC v. Boockvar*, 433 F. Supp. 3d 670 (M.D. Pa. 2020) (Secretary opposed enjoinment of voter registration and residency requirement as unconstitutional as applied to the plaintiffs); *Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 95 F.3d 253 (3d Cir. 1996) (County Defendants enjoined from enforcing unconstitutional provision of the Pennsylvania Election Code).

### 1.   **The Commonwealth's Arguments**

The Commonwealth contends that Plaintiffs lack standing to bring these claims against the Secretary because Plaintiffs cannot satisfy the redressability requirement of standing, given that (a) this Court never imposed an affirmative duty on the Secretary in its previous order enjoining the parties and (b) as stated in its argument the Court discussed earlier, the Secretary is not a proper party to this action. (ECF No. 95, at 9–11.) Specifically, the Commonwealth contends that because "the underlying circumstances of Plaintiffs' present challenges to the" Home Rule Law and Election Code "have not changed since 2016 with regard to any role played by the Secretary of the Commonwealth, Plaintiffs cannot establish standing against this Defendant." (*Id.* at 11.)

In turn, Plaintiffs again assert that the Secretary, as the "chief election official of the Commonwealth of Pennsylvania," "routinely oversees and exercises her authority over election matters delegated by the Commonwealth to local election boards." (ECF No. 136, at 14.) As such, Plaintiffs argue that by seeking declaratory and injunctive relief against this Defendant, their injury will be redressed.

### 2.   **The County Defendants' Arguments**

The County Defendants argue that Plaintiffs lack standing to bring these claims based on the following: (1) lack of injury-in-fact and (2) lack of ripeness. (ECF No. 93, at 10–14.) First, the County Defendants assert that Plaintiffs' allegations of harm are conjectural and speculative because they "set forth little more than an expression of an intention sometime in the future to possibly attempt to have some type of referendum questions placed on the ballot." (ECF No. 93, at 13.) Specifically, they contend that Plaintiffs' claims "are based upon allegations of what could happen at some indefinite time period in the future," which does not translate to "an immediate and concrete controversy involving actions taken by the County Defendants." (*Id.*) Second, the

County Defendants argue that Plaintiffs' "case lacks ripeness" because there is "no pending referendum question" and thus no immediacy. (*Id*. at 13.)

In opposition, Plaintiffs argue that they have sufficiently alleged a "prospective injury" and that the "threat of enforcement" of a law allegedly causing that injury is "real, immediate, and direct." (ECF No. 136, at 16 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).) Plaintiffs contend that they "continue[] to work toward launching a new petition to amend the Allegheny and Pittsburgh home rule charters to force local government to adopt more transparent government processes," and have "expressly represented that [they] seek[] to circulate petitions to advance [OpenPittsburgh.Org's] agenda for open government election" by placing an open government question on the ballot for the 2021 or the 2022 general election ballots. (*Id*. at 16.)

### 3.  Plaintiffs Plausibly Allege the Required Elements of Standing, and Their Claims Are Ripe

The Court concludes that Plaintiffs have sufficiently shown their standing in relation to both the County Defendants and the Commonwealth to move forward with their challenges against the statutory provisions at issue in this case.

Every case that comes before an Article III court must present a live case or controversy. *See* U.S. Const. art. III, § 2. To implement the Constitution's case or controversy requirement, federal courts employ the doctrine of standing, which asks whether this plaintiff can assert these claims consistent with the limited jurisdiction provided by Article III. *See, e.g.*, *Pub. Interest Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."). While the standing doctrine has evolved over the years, the operative Supreme Court precedent "holds that a litigant must demonstrate [1] that it has suffered a concrete and particularized injury that is either actual or imminent, [2] that the injury is

fairly traceable to the defendant, and [3] that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To "ensure proper adversarial presentation" of the case, the plaintiff bears the burden of demonstrating her standing. *See id.*

### a. **Standing**

Under the first prong of standing, "[a]bstract injury is not enough" to establish a concrete injury that is actual or imminent. *Lyons*, 461 U.S. at 101–02 (citing *Golden v. Zwickler*, 394 U.S. 103, 109–10 (1969); *United Public Workers v. Mitchell*, 330 U.S. 75, 89–91 (1947); *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Massachusetts v. Mellon*, 262 U.S. 447, 448 (1923)). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation and internal quotation marks omitted).While there is no Third Circuit precedent directly addressing standing to challenge the statutory provisions Plaintiffs allege to have infringed on their constitutional rights, the Court finds other decisions within this Circuit to be instructive.[14] For example, in *Benezet Consulting, LLC v. Boockvar*, 433 F. Supp. 3d 670, 675, 684 (M.D. Pa. 2020) and *De La Fuente v. Cortes*, 261 F. Supp. 3d 543, 549–50 (M.D. Pa. 2017), the district court held that the respective plaintiffs had standing to challenge provisions of

---

[14] As support, Plaintiffs also rely on allegedly similarly situated cases from the Ninth Circuit and U.S. District Court for the District of Idaho to suggest that Plaintiffs satisfy the injury-in-fact requirement by alleging an intent to circulate petitions in future elections. (ECF No. 136, at 17–18.) For example, in *De la Fuente v. Padilla*, 930 F.3d 1101, 1104 (9th Cir. 2019), the Ninth Circuit held that the plaintiff still had standing to challenge California's ballot access restrictions based on the plaintiff's confirmation that he planned to run for President of the United States in 2020. Likewise, in *Daien v. Ysursa*, 711 F. Supp. 2d 1215, 1224 (D. Idaho 2010), the district court held that an Arizona resident who wanted to gather signatures "on behalf of Presidential candidates in the next Presidential cycle" had standing to challenge an Idaho requirement permitting only residents to circulate election petitions. The Court finds these cases persuasive in its ultimate conclusion that Plaintiffs have standing.

the Pennsylvania Election Code (specifically, 25 P.S. § 2869—one of the same provisions at issue in this case) because the plaintiffs intended to engage in the political process again.

Specifically, in *Benezet Consulting*, Judge Kane rejected any argument that the "Plaintiffs lack standing, as Plaintiffs presumably intend to 'engage in the political process,' which is unquestionably 'affected with constitutional interests,' and, additionally, by operation of the Election Code, 'there is a credible threat' that Plaintiffs' election-related conduct would be impacted by the Election Code in the context of the 2020 primary election in the same manner it was during the 2016 primary election.'" 433 F. Supp. 3d at 684 (alterations omitted) (quoting *De La Fuente*, 261 F. Supp. 3d at 550 (holding that the plaintiff had standing to challenge § 2869 of the Pennsylvania Election Code because he intended to engage in the political process; his constitutional interests were affected; and there was a credible threat that the plaintiff's conduct in the 2020 election would be blocked like it was in the 2016 election)).

Like its sister district courts, the Court concludes that Plaintiffs have sufficiently alleged that they are "immediately in danger of sustaining some direct injury as a result of the challenged official conduct." *Lyons*, 461 U.S. at 102 (internal quotation marks omitted). Here, Plaintiffs' TAC specifically alleges that Plaintiffs intend "to circulate and file petitions to amend the Allegheny County Home Charter Rule to amend the composition and qualification of members who may serve on the Allegheny County Board of Elections"; that "OpenPittsburgh.Org has expended the time and money to draft the Proposed Amendment in preparation for the circulation of petitions"; that "OpenPittsburgh.Org retains a continuing agreement with Trenton Pool, an out-of-state professional petition circulator, to organize, hire and circulate referendum petitions"; that "OpenPittsburgh.Org [] continues to organize, with the intent to circulate and file multiple petitions in future elections to incrementally amend both the Allegheny County and Pittsburgh City Home

23

Rule Charters to require greater transparency and accountability of public officials in order to implement the open government provisions advocated by OpenPittsburgh.Org"; and that "[t]he economic cost imposed on OpenPittsburgh.Org of having to comply with the voter registration and out-of-state circulator bans challenged in this action continue[s] to threaten the ability of OpenPittsburgh.Org to be able to afford future petition drives necessary to secure ballot access for [its] open government agenda through referendum petitions." (ECF No. 86, ¶¶ 25–26, 29–30, 35.) Plaintiffs have also established that the operation of the Election Code, to the extent it is incorporated into the Home Rule Law, has created a credible threat that Plaintiffs' "election-related conduct would be impacted by the Election Code in the context of the" the 2022 general election. *See Benezet Consulting*, 433 F. Supp. 3d at 684. Accordingly, the Court concludes that Plaintiffs have sufficiently alleged a cognizable injury in fact.

Next, the Court addresses the County Defendants' argument that Plaintiffs' alleged injury is not fairly traceable to them (prong two of the standing analysis), and the Commonwealth's argument that Plaintiffs' alleged harm cannot be redressed by the Secretary (prong three of the standing analysis). First, the Court concludes that Plaintiffs' alleged imminent injury is fairly traceable to both the County Defendants and the Commonwealth. Like the court in *De La Fuente* held, the Court here concludes that "the only reasons for Plaintiff's" continued expenses of time and money and continued restrictions on their ability to place questions advancing OpenPittsburgh.Org's mission on the ballot are due to "the statutory provisions challenged here." 261 F. Supp. 3d at 550. Therefore, Plaintiffs have satisfied their burden to establish that the Secretary and the County Defendants' continued enforcement of the statutory provisions at issue is causally connected to Plaintiffs' alleged harms.

As to the issue of redressability, because Plaintiffs have alleged that the Secretary and County Defendants' continued enforcement of the voter registration and out-of-state circulator restrictions infringes on their First Amendment rights, "a favorable decision in this matter," *e.g.*, injunctive and declaratory relief as Plaintiffs request, will likely redress Plaintiffs' alleged injury. *See De La Fuente*, 261 F. Supp. at 550 (explaining that where it was shown that "the only reasons for Plaintiff's abbreviated campaign were the statutory provisions challenged here . . . a favorable decision in this matter [was] likely to redress Plaintiff's injury"). Finally, the Court has already concluded that the Secretary is a proper and necessary party to this action, so the Commonwealth's assertion that it will be unable to redress Plaintiffs' harms because it is not a proper party—in part, as evidenced by the Court's previous temporary restraining order in this case, which the Secretary argues places only a non-affirmative duty on it—is a failing argument. At a general level, the Court notes that prohibitory injunctive relief, which the Court employed in the Order at ECF No. 42, *see Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996) (explaining that a prohibitory injunction is one that restrains a responsible party), constitutes a form of relief at the Court's disposal, which cuts against the Commonwealth's argument that Plaintiffs have failed to establish redressability as to the Secretary.[15] The Court therefore concludes that the Secretary, as well as the County Defendants, can redress Plaintiffs' claims for the purposes of plausibly alleging standing.

---

[15] For these reasons, the Court's analysis here fulfills the directives of the Supreme Court in *California v. Texas*, 141 S. Ct. 2104 (2021). The challenged provisions are plainly "enforceable," and enforceable by specific individual public offices. *See California*, 141 S. Ct. at 2115. In addition, Plaintiffs have sufficiently shown that unless Defendants *are* enjoined, they will enforce the challenged provisions against Plaintiffs, and will do so in regard to the 2022 election cycle. *See id.* Consequently, Plaintiffs sufficiently aver the necessary connections between their anticipated and contemporaneous conduct, the textual provisions challenged, the power and intent to enforce those provisions by specific public offices, and the tangible judicial relief requested in relation to the injury alleged to be suffered. *See id.*

### b. Ripeness

Finally, the Court rejects the County Defendants' argument that Plaintiffs' claims fail for lack of ripeness. Specifically, the County Defendants argue that Plaintiffs' "case lacks ripeness" because there is "no pending referendum question" and thus no immediacy. (ECF No. 93, at 13.) Ripeness "determines when a proper party may bring an action." *Phila. Fed. of Teachers, American Fed'n of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998) (quoting *Travelers Ins. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995)). In *Abbott Laboratories*, the Supreme Court pronounced a two-part test to determine whether equitable relief, such as a prayer for injunctive or declaratory relief, is ripe for review: a court should look to (1) "the fitness of issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). "Under the fitness for review inquiry, a court considers whether the issues presented are purely legal, as opposed to factual, and the degree to which the challenged action is final." *Id.* (internal quotation marks omitted). While the "principal consideration" in deciding whether the issue is fit for review is "whether the record is factually adequate to enable the court to make the necessary legal determinations," *Artway v. Attorney General of N.J.*, 81 F.3d 1235, 1249 (3d Cir. 1996), a claim that is "predominately legal" is still "arguably fit for review" so long as the "plaintiffs still demonstrate that they face a real and immediate threat of injury from the denial of pre-enforcement review of the merits." *Phila. Fed. of Teachers*, 150 F.3d at 325 (citing *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 421 (3d Cir. 1992)). Under the second prong, the court "focuses on the hardship that may be entailed in denying judicial review," which "turns on whether the challenged action creates a 'direct and

immediate' dilemma for the parties, such that the lack of pre-enforcement review will put the plaintiffs to costly choices." *Id.* at 323 (quoting *Abbott Lab'ys*, 387 U.S. at 152; *W.R. Grace & Co. v. E.P.A.*, 959 F.2d 360, 364 (1st Cir. 1992)).

According to the "2021 Pennsylvania Elections Important Dates," the "[l]ast day to circulate and file nomination petitions" for consideration of a new question on the 2021 general election ballot was March 9, 2021, and the "[l]ast day to circulate and file nomination papers" was August 2, 2021. *See 2021 Pennsylvania Elections Important Dates*, https://www.votespa.com/about-elections/pages/election-calendar.aspx (last visited Sept. 24, 2021). With the relevant deadlines having passed for the 2021 election, the Court now considers whether Plaintiffs' stated intent to participate in circulating and nominating petitions in the 2022 Pennsylvania general election process satisfies the two-prong test set forth by the Supreme Court in *Abbott Laboratories*.

The Court concludes that Plaintiffs' claims are (1) fit for review and that (2) withholding judicial consideration at this juncture would create a "'direct and immediate' dilemma" to Plaintiffs. *Phila. Fed. of Teachers*, 150 F.3d at 323 (quoting *Abbot Lab'ys*, 387 U.S. at 152). Plaintiffs have alleged that Pa. C.S. § 2943(a), to the extent it incorporates 25 P.S. § 2869, is unconstitutional on its face and as-applied, in violation of the First Amendment—a "predominately legal" argument but one that is nonetheless "arguably fit for review" because the factual allegations before the Court appear to be fairly developed in this case since its beginnings in 2016. *Id.* at 323 (holding that the plaintiff's claim that "section 204(a) of the [Pennsylvania Workers Compensation Act], on its face, violates the contracts clause of both the United States and Pennsylvania constitutions" is a claim that is "predominately legal [and is] arguably fit for review"). Moreover, Plaintiffs have also alleged that they face "real and immediate threat of injury" from the denial of

pre-enforcement review under prong two. *Id.* at 325. Plaintiffs have alleged that OpenPittsburgh.Org expends time and money to prepare, circulate, and file petitions to amend the Home Charter Rule, and that these costs affect all aspects of its operations as well as its decision to continue to contract with Trenton Pool "and other out-of-state circulators and unregistered Pennsylvania residents." (ECF No. 86, ¶¶ 25–35.) In sum, Plaintiffs have alleged that having to comply with the voter registration and out-of-state circulator bans imposes an economic cost on them beginning in advance of the actual date by which petitions are due to be included on the general election ballot, and those economic costs "continue to threaten the ability of OpenPittsbugh.Org to be able to afford future petition drives necessary to secure ballot access." (*Id.* ¶ 35.)

Like the plaintiff in *Abbott Laboratories*, Plaintiffs here allege that they will face a "direct effect on the[ir] day-to-day business" from the enforcement of the statutory provisions at issue in this case, and that they must begin to make costly choices at a point in time earlier than the actual enforcement of the referendum petition process. 387 U.S. at 152. "Either [Plaintiffs] must comply with [] every [] requirement and incur the costs of" complying with the voter-registration requirement and out-of-state circulator ban, or Plaintiffs place their ability to access the general election ballot at risk. *Id.* (internal quotation marks omitted) (quoting *Abbott Lab'ys v. Celebrezze*, 228 F. Supp. 855, 861 (D. Del. 1964)). Accordingly, the Court concludes that Plaintiffs satisfy both prongs of the *Abbot Laboratories* test, and their claims are ripe for judicial review.

### c.  Mootness

Plaintiffs contend that "Defendants' argument that Plaintiffs[] no longer have standing because the impairment of their rights under the First Amendment in the circulation of petitions to amend the Home Rule Charter . . . in 2016 has long since passed is actually a mootness argument." (ECF No. 136, at 20.) Plaintiffs argue that Defendants attempt to couch their mootness argument

as a standing argument as method of evading the Court's application of the "capable of repetition yet evading review" exception to the mootness doctrine. (*Id.*) Whether Defendants do, in fact, intend to avoid the mootness doctrine for the reasons asserted by Plaintiffs does not change the Court's ultimate determination, as the Court concludes that Plaintiffs' claims are still ripe for review. However, because the Court now treats Plaintiffs' TAC as asserting an intent to participate in the 2022 general election ballot process, the Court must address the question of mootness. *See Vesco v. SEC*, 462 F.2d 1350, 1351 (3d Cir. 1972) (explaining that because the issue of mootness directly impacts the court's ability to exercise jurisdiction, the court "must consider the problem *sua sponte*" (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

A court lacks subject matter jurisdiction over a case or controversy when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Merle v. United States*, 351 F.3d 92, 94 (3d Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Under the "'capable of repetition yet evading review' exception to the mootness doctrine," however, "a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* at 94–95 (quoting *Morse v. Republican Party of Virginia*, 517 U.S. 186, 235 n.48 (1996) and *Spencer v. Kemna*, 23 U.S. 1, 17 (1998)).

Here, where "it is reasonable to expect that Plaintiffs intend to participate" in the referendum process for the 2022 general election, which would "invoke application of the challenged provisions," Plaintiffs' allegations of intent to participate are "sufficient to negate any finding of mootness to establish that Plaintiffs' claims are ripe for review." *See Benezet*

*Consulting*, 433 F. Supp. 3d at 682 (quoting *Merle*, 351 F.3d at 95); *see also Morrill v. Weaver*, 224 F. Supp. 2d 882, 891 (E.D. Pa. 2002) ("Our abiding interest in the constitutionality of the elections process . . . cannot be regulated by adjudging every case unripe before the election or moot after the election." (internal citation omitted)). Accordingly, the Court concludes that it is not divested of jurisdiction to adjudicate Plaintiffs' constitutional challenges to the election laws at issue simply because the 2021 general election deadlines have passed, because there is a reasonable expectation that Plaintiffs intend to participate in the referendum petition process for the 2022 general election in which they would be subject to the same voter-registration requirement and out-of-state circulator ban. Accordingly, the Court concludes that Plaintiffs' claims are not moot.

Having concluded that Plaintiffs' claims are justiciable, the Court now addresses the remaining arguments Defendants raise via their motions to dismiss.

### D. <u>The Commonwealth's Statutory Interpretation Argument: Whether the Provision of the Election Code Referenced in this Action is Applicable to This Litigation</u>

The Commonwealth argues that the Secretary should be dismissed as a party to this suit because the Election Code provision "referenced in the Home Rule and Optional Plan Law is not applicable to this litigation." (ECF No. 95, at 11.) The Commonwealth contends that the Election Code—specifically, 25 P.S. § 2869—is inapplicable to this litigation because 53 Pa. C.S.A. § 2943(a) does not specifically or generally incorporate that provision of the Election Code, as Plaintiffs contend. (ECF No. 95, at 13.)

As support for its argument, the Commonwealth directs the Court's attention to the following portion of 53 Pa. C.S.A. § 2943(a): "The petition and the proceedings therein shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing

and adjudication of nomination petitions insofar as such provisions are applicable . . . ." Based on

this language, the Secretary argues that because this litigation is not focused on the "the signing,

filing or adjudication" of petitions, but rather, focused on the *circulation* of petitions, the

Pennsylvania Election Code, 25 P.S. § 2869, implicating the Secretary does not apply to this

action. Second, the Commonwealth argues that "[t]he General Assembly understood the concept

of *circulation* as *distinct* from signing," so it did not intend for § 2869 requirements to extend to

circulation of petitions. (ECF No. 95, at 13.) Finally, the Commonwealth asserts that because 53

Pa. C.S.A. 2943(a)'s language provides that "election laws" govern "only insofar as such

provisions are applicable," it is apparent that 25 P.S. § 2869 does not apply to petitions for

referendums proposing amendments to a home rule charter. (*Id*. at 14.) Instead, the Commonwealth

argues that 25 P.S. § 2869 "applies solely to the collection and filing of signatures for those seeking

to access partisan primary ballots of the two major parties." (*Id*. at 15–16.) Based on this argument

of statutory interpretation, the Secretary argues that she should be dismissed from this suit as the

only statutory provision possibly implicating her does not apply to this litigation.

In opposition, Plaintiffs argue that the Commonwealth's representation that the

"unconstitutional residency and voter requirements imposed on the signing and filing of

nomination petitions do not apply to the signing and filing of petitions to amend Home Rule

Charters is without merit." (ECF No. 99, at 12.) First, 53 Pa. C.S.A. § 2943(a) "directly

incorporates 25 P.S. § 2869" when it states that "the petition[s] and proceedings therein shall be

in the manner and subject to the provision of the *election laws* which relate to the signing, filing

and adjudication of *nomination petitions.*" (*Id*. (emphasis in original).) Second, Plaintiffs assert

that the Commonwealth merely attempts to create a distinction between "circulation of petitions"

and the "signing and filing of petitions" in an effort to somehow argue that the Home Rule Law is

free "from the unconstitutional state residency and voter registration requirements imposed on the signing and filing of nomination petitions." (*Id*. at 13.) Finally, in contrast to the Commonwealth's interpretation of the "insofar as such provisions are applicable" language, Plaintiffs contend that the phrase functions to simply remove the party affiliation requirement of § 2869 because "party affiliation has no applicability to the circulation of a non-partisan petition to amend a Home Rule Charter." (*Id*. at 14.)

The Court is unconvinced by the Secretary of the Commonwealth's argument. First, Pennsylvania courts, including the Pennsylvania Supreme Court, have routinely applied the requirements set forth in the Pennsylvania Election Code, 25 P.S. § 2869, to challenges regarding sufficiency of signatures accumulated by circulators at the municipal level. *See, e.g.*, *In re City Pittsburgh Home Rule Charter*, 694 A.2d 1128, 1131 & n.10 (Pa. Commonw Ct. 1997) (reviewing and applying the Election Code, as set forth at 25 P.S. § 2869, to determine whether the trial court should have struck 22 signatures from a *home rule charter referendum petition*); *see also In re Glazier*, 474 Pa. 251, 315 (1977) (relying on the requirements for a valid petition as set forth in 25 P.S. § 2869 in addressing a municipal nomination petition challenge). Second, the Commonwealth argues that because the General Assembly did not include the word "circulation" within the text of 53 Pa. C.S. § 2943(a), it did not intend § 2869 to apply. However, as Plaintiffs have alleged, to *file* any petition under the Home Rule Charter Law, the petition must include a circulator statement, which "in turn imposes the requirement that a person who collected the signatures attests that he/she is a registered voter . . of the Commonwealth," the very requirements set forth in § 2869.[16]

---

[16] To the extent the Commonwealth suggests that "a challenge to any circulator requirements, at least insofar as Allegheny County is concerned, is properly with the Allegheny County City Council," and not with the Election Code (ECF No. 95, at 15),the Court finds this argument to be unavailing. As this Court stated earlier, in ascertaining whether a complaint has named defendants who meet the prerequisites for adjudication in a federal court, the Court is *not* charged with determining "the most suitable defendants." *Finburg*, 634 F.2d at 53. Moreover, the Court notes that pursuant to 53 Pa. C.S.A § 2962(a)(5) of the Pennsylvania Election Code, a home rule charter "shall not give any power or authority to the municipality contrary to or in limitation or enlargement of powers granted by statutes which

Finally, the Court rejects the Commonwealth's argument to construe the phrase "insofar as such provisions are applicable" as limiting "the import of a partisan primary process into a process for placing referenda on the ballot" because such an interpretation would "avoid the constitutional question altogether." (ECF No. 95, at 16.) Just as it is presumed that the General Assembly's statutory language did not intend to violate the Constitution of the United States, 1 Pa. C.S. § 1922(3), it is also presumed that when interpretating a Pennsylvania statutory provision, the General Assembly did not intend for an absurd or unreasonable result, *see* 1 Pa. C.S. § 1922(a).

The Court concludes that to interpret the statute as the Commonwealth suggests—that the phrase "insofar as such provisions are applicable" eliminates all voter registration and out-of-state circulator restriction requirements at issue in this case—would create an absurd or unreasonable result contrary to the General Assembly's intent. This conclusion is reflected in the allegations Plaintiffs have set before the Court, which the Court must take as true at the motion to dismiss stage, and is further evidenced by the series of Pennsylvania court decisions that have routinely applied 25 P.S. § 2869 to referendum petitions challenges asserted on the grounds that the circulators failed to comply with the Election Code's requirements. *See In re Petition for Initiative to Prevent Sale, Lease of Gracedale*, No. 269 C.D. 2011, 2011 WL 10827137, at *4 (Pa. Commw. Ct. Apr. 1, 2011) (determining whether the circulators of a referendum petition fully complied with the Election Code, 25 P.S. § 2869). Further, Plaintiffs have offered an interpretation of the phrase that would not result in a reading of the statute that is diametrically opposed to the reality of how the Home Rule Charter law has been applied (which has consistently incorporated the petition requirements set forth in 25 P.S. § 2869). The Court concludes that a more reasonable

---

are applicable to a class or classes of municipalities," which includes "[t]he registration of electors and the conduct of elections." This serves as further indicia that the Pennsylvania Election Code governs the conduct of elections, including circulator and petition requirements at the municipal level.

interpretation of the phrase "insofar as such provisions are applicable" means that the "party affiliation requirement of 25 P.S. § 2869" is inapplicable and does not mean that 25 P.S. § 2869 is altogether inapplicable to 53 Pa. C.S.A. § 2943(a). Accordingly, the Court will not dismiss the Secretary from this action.[17]

### E.  **The County Defendants'** *Monell* **Liability Argument**

In their supplemental motion to dismiss briefing (ECF No. 134), the County Defendants also present a final argument. They argue that because the individual board members and manager of the Allegheny County Board of Elections have been sued in their official capacities, the only actual County Defendant, "for purposes of this action," is Allegheny County as a municipal government. (ECF No. 134, at 2.) Accordingly, the County Defendants argue that Plaintiffs must plead more than just a constitutional violation, and plead the additional elements set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 692 (1978). (*Id.* at 2–3.) Using that framework, Defendants first contend that Plaintiffs' TAC "fails to identify a policy or custom of the Allegheny County that is the root of their claim of a violation of their constitutional rights." (ECF No. 134, at 3.) The County Defendants reason that the Plaintiffs claims rest not with the technical requirements set forth in 53 Pa. C.S.A. § 2943(a), but rather, the constitutionality of "nomination petitions mandated for use in the Pennsylvania election matters by Section 2869 of the

---

[17] In the Commonwealth's Notice at ECF No. 135, the Commonwealth states that Secretary also includes for the Court's consideration its Reply Brief (ECF No. 100) and Status Report (ECF No. 110), specifically paragraph 26 of the Status Report. The only additional argument contained in those documents that the Court has not already addressed is found in the Status Report at paragraph 26, in which the Secretary states that "the state of the law upon which the proposed order is predicated now seem[s] to be called into question given the Commonwealth's Court recent decision in a case litigated by Attorney Otter in which Attorney Rossi testified as a witness that underscores the legitimate governmental interest in the in-state requirement." (ECF No. 110, at 5–6 (citing Memorandum Opinion and Order, *Alkassmi v. Boockvar*, No. 135 MD 1010 (Pa. Commw. Ct. Mar. 6, 2020); *Wyatt v. Boockvar*, No. 137 MD 2020 (Pa. Commw. Ct. Mar. 6, 2020)). The Court does not consider this observation made by the Commonwealth in a status report filed with the Court because it is not relevant to the present issues under consideration: those raised by Defendants' motions to dismiss. The Commonwealth does not move to dismiss Plaintiffs' TAC on the grounds that Plaintiffs have failed to plausibly allege that the Commonwealth has not asserted a compelling government interest.

Pennsylvania Election code," a legal responsibility they assert "indisputably rests with the Secretary of the Commonwealth." (*Id*. at 3–4 (citing 25 P.S. § 2621(a)).) Second, the County Defendants argue that Plaintiffs' TAC fails to "satisfy the causation requirement needed for liability under Section 1983"—specifically, they "cannot show that the County, in the form of the County Board of Elections or the Elections Division Manager, was the moving force behind the injury alleged" because the County Defendants are "ministerial" and exercise no discretion in applying the Election Code of the Commonwealth of Pennsylvania. (*Id*. at 4–5.) In opposition, Plaintiffs continue to assert that the County Defendants are proper and necessary parties to this action.

First, the Court agrees with the County Defendants that the prevailing law requires the court to treat "[s]uits against state officials in their official capacity . . . as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Plaintiffs sue the members of the County Defendants in their official capacities only. Accordingly, the Court must determine whether Plaintiffs have plausibly alleged that the violation of their rights "was caused by either a policy or a custom of the municipality." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). "[A] [p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Id*. (last alteration in original) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). Meanwhile, "customs are 'practices of state officials . . . so permanent and well settled' as to virtually constitute law." *Id*. (quoting *Kneipp*, 95 F.3d at 1212). To summarize, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Here, Plaintiffs allege that County Defendant David Voye "is the official responsible to enforce the challenged statutory provisions by either accepting or rejection Plaintiffs' referendum petitions" and that "Defendant Voye is charged with rejecting any referendum petition" that is not executed by a registered Pennsylvania voter. (ECF No. 86, ¶ 8.) Moreover, Plaintiffs allege that County Defendant Kathryn M. Hens-Greco, who is the interim member and President of the Allegheny County Board of Elections is "charged with enforcing the statutes challenged" and is Voye's direct supervisor. (*Id*. ¶ 19.) Finally, Plaintiffs allege that the other members of the Board of Elections are charged with enforcing the statutes and supervising Voye. (*Id*. ¶¶ 20–21.)

In *Berg v. County of Allegheny*, the case on which the County Defendants rely to assert that Plaintiffs have failed to allege a policy or custom, the Third Circuit held that where the County conceded that its warrant clerk "followed the practices and procedures which had been in effect at the time she started working," it was "more than a reasonable inference to suppose" that the alleged custom or policy of issuing warrants "would be the product of a decision maker's action or acquiescence." *Berg*, 219 F.3d at 276. Here, the Court concludes that, at the very least, Plaintiffs have plausibly alleged that the County Defendants, in their roles as election officials, have "followed" and/or acquiesced to what the Court observes to be a "standard operating procedure of the local governmental entity." *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted).

Further, the Court is unpersuaded by the County Defendants' attempt to evade responsibility by arguing that the Secretary of the Commonwealth is the official authority making policy determinations, "not members of the county boards of election." (ECF No. 134, at 4.) The Court finds instructive the analysis of a case from the U.S. Court of Appeals of the Fifth Circuit: *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). In *Briscoe*, the Fifth Circuit

grappled with the issue of whether the plaintiff could recover damages under § 1983 from a county judge in his official capacity. *Id.* at 403–04. While the *Briscoe* court concluded that the judge's actions at issue in the case did not represent official county policy, the court clarified that there were "many actions of a county judge that may justifiably be considered to constitute or represent county policy under *Monell.*" *Id.* at 404. The court reasoned that "a Texas county judge is charged by the state constitution and statutes with the performance of numerous, executive, legislative and administrative chores in the day-to-day governance of the county." *Id* at 404. Accordingly, the county judge, "like other elected county officials . . . holds virtually absolute sway over the particular tasks or areas of responsibilities entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein." *Id*. The Fifth Circuit thus explained that, "at least in those areas in which he, alone, is the final authority or ultimate repository of county power, [the county judge's] official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983." *Id*. (quoting *Monell*, 436 U.S. at 694).

Like the county judge in *Briscoe*, the County Defendants here are elected officials charged by statute to oversee the circulation of petition process, which includes the members' ability to reject petitions or move them forward to the general election ballot. The Court concludes that for the purposes of alleging a custom or policy, the Court must consider the County Defendants' official conduct and decisions relating to the petitions to be "edicts or acts . . . represent[ing] official policy." *See Briscoe*, 619 F.2d at 404 (quoting *Monell*, 436 U.S. at 694.) Accordingly, the Plaintiffs' TAC plausibly alleges "edicts or acts" on behalf of the County Defendants that may fairly be said to represent official policy." *Monell*, 436 U.S. at 694.

Moreover, the Court rejects the County Defendants' argument that Plaintiffs' TAC fails to show that the County Defendants were the "moving force" behind Plaintiffs' alleged injury. Here, Plaintiffs have plausibly alleged that the policy or custom identified above "facially" violates federal law sufficient to move past the motion to dismiss stage. In their TAC, Plaintiffs have plausibly asserted that the voter registration requirement and out-of-state circulator restriction, set forth in 25 P.S. § 2869 and as enforced by the County Defendants' authority under 53 Pa. C.S.A. § 2943, are not narrowly tailored to effectuate a compelling government interest, and thus, the statutory provisions unduly burden Plaintiffs' First Amendment rights. (*See* ECF No. 86, ¶ 44–45; ECF No. 136, at 25–32); *Bielevicz*, 915 F.2d at 850 ("[I]t is for the jury to determine whether their [policymakers'] decisions have caused the deprivation of the rights at issue by policies which affirmatively command that it occur . . . or by acquiescence in a longstanding practice or custom which constitutes the 'standing operating procedure' of the local government entity." (alterations in original) (quoting *Jett,* 491 U.S. at 737)).)

Finally, to accept the County Defendants argument that their enforcement of the Pennsylvania Election Code is purely ministerial, and they are not the moving force behind Plaintiffs' alleged injuries, would be to yield a result that flies in the face of well-established Supreme Court and Third Circuit law. *See Finberg*, 634 F.2d at 54 (applying the principles of law established by the Supreme Court in *Ex Parte Young*, 209 U.S. at 157, and holding that a purely ministerial state official role does not preclude liability). The County Defendants essentially claim that because they have no interest in the statutes they enforce, they cannot be the moving force behind Plaintiffs' alleged constitutional injury. In the Court's judgment, such an argument is "inconsistent with [the County Defendants'] obligations to respect the constitutional rights of citizens." *Finberg*, 634 F.2d at 54; *Ralston v. Zatz*, No. 94-03723, 1997 WL 560602, at *6 (E.D. Pa. Aug. 26, 1997) (finding unpersuasive the argument that the state officials "were not proper

defendants because of their purported lack of interest in defending the state procedures" and holding that claiming disinterest would be inconsistent with their obligations to respect the citizens' constitutional rights). Here, Plaintiffs have plausibly alleged that the County Defendants' reliance on and enforcement of the statutory provisions at issue in this case caused Plaintiffs' injuries. These allegations are sufficient to establish that the County Defendants were at least part of the moving force behind Plaintiffs' alleged injury. *See Ralston*, 1997 WL560602, at *6.

Accordingly, the Court concludes that Plaintiffs have plausibly alleged a § 1983 claim against the County Defendants, even when examined through the specific lens required by the Supreme Court in *Monell*.[18]

## V.    <u>CONCLUSION</u>

The Court first concludes that Plaintiffs have satisfied their burden to establish all Defendants are proper and necessary parties to this action; that they have plausibly alleged all elements necessary to establish Article III standing; that Plaintiffs' claims are ripe for adjudication; and finally, that the "capable of repetition yet evading review" exception to the mootness doctrine applies.

Second, the Court rejects (a) the Secretary's argument that Plaintiffs have failed to state a claim as to the Commonwealth because the municipal statutory provision at issue—53 Pa. C.S.A. §

---

[18] In Plaintiffs' Consolidated Amended Memorandum of Law in Opposition to Defendants' Motions to Dismiss (ECF No. 136), Plaintiffs additionally argue that on the merits, they have stated a valid claim with respect to their challenge to the voter registration and residency requirement to circulate referendum petitions to amend Home Rule Charters. Specifically, they argue that 53 Pa. C.S.A. § 2943(a) and 25 P.S. § 2869 impose a burden on political speech—speech protected by the First Amendment of the United States Constitution—which thus requires the Court to analyze the statutory provisions under the strict scrutiny standard. (ECF No. 136, at 30–31.) Applying strict scrutiny, Plaintiffs argue that Defendants fail to assert that the statutory provisions at issue are narrowly tailored to any compelling government interest. (*See id*. at 25–32.) Neither the Secretary of the Commonwealth nor the County Defendants argue that Plaintiffs have failed to plausibly allege a constitutional violation. Because Defendants' motions to dismiss do not raise that argument, the Court does not address (a) whether Plaintiffs have plausibly alleged a constitutional violation pursuant to the First Amendment caused by the statutory provisions at issue in this litigation or (b) whether the burden the statutory provisions place on Plaintiffs' asserted constitutional rights is permissible, in that Defendants have narrowly tailored the statutory provisions at issue to a compelling governmental interest.

2943(a)—does not specifically or generally incorporate the Pennsylvania Election Code provision at issue, 25 P.S. § 2896, and further rejects (b) the Secretary's alternative argument that the municipal provision can be interpreted in a such a way that 25 P.S. § 2869 is inapplicable, such that the Secretary is an improper party to this suit. The Court concludes that the Secretary's suggestion would result in an absurd or unreasonable interpretation of 53 Pa. C.S.A. § 2943(a) that is impermissible under Pennsylvania rules of statutory interpretation. As such, the Secretary continues to be a proper party to this suit.

Finally, the Court concludes that Plaintiffs have plausibly alleged that the County Defendants engaged in a "custom" or "policy" that violated an alleged constitutional right, and that said custom or policy was the moving force behind Plaintiffs' alleged injury, such that Plaintiffs may pursue a § 1983 action against the County Defendants in accord with *Monell*.

Based on the foregoing, the Court denies the County Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Second, the Court denies the Secretary of the Commonwealth's Motion to Dismiss for Failure to State a Claim.

An appropriate Order will issue.


s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge


Dated: September 27, 2021
cc:      All counsel of record