IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OPENPITTSBURGH.ORG and TRENTON POOL, | ) ) ) |
| Plaintiffs, | ) ) ) 2:16-cv-01075 |
| v. | ) ) |
| DAVID VOYE, in his official capacity as the Manager of the Allegheny County Division of Elections, et al. | ) ) ) ) ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Plaintiffs' Motion to Convert Preliminary Injunction into a Permanent Injunction (ECF No. 160). For the reasons set forth below, the Court GRANTS Plaintiffs' Motion and will enter a permanent injunction against Defendants, but only on the terms and for the reasons set forth below. An appropriate Order will follow.

I.   BACKGROUND

The parties are familiar with the lengthy procedural background of this case, so the Court recites it only as relevant here. Plaintiff[1] OpenPittsburgh.org is "an unincorporated grass-roots political organization" that has aimed to circulate petitions to place referendum questions on the City of Pittsburgh's general election ballots in elections that have taken place since this litigation began in 2016. (ECF No. 1 ¶ 15; ECF No. 86 ¶ 12.) Plaintifff filed a Complaint alleging a host of

---

[1] On the Complaint, Jake Witmer, a resident of Alaska, a professional circulator of election and referendum petitions, and employee of Benezet Consulting LLC ("Benezet") was listed as a second Plaintiff. (ECF No. 1 ¶ 16.) Benezet is an "out-of-state professional election and referendum circulation firm." *Id*. When Plaintiffs filed their Second Amended Complaint, Witmer was replaced by Trenton Pool, the owner of Benezet. (ECF No. 74 ¶ 17.) The Third Amended Complaint (ECF No. 86) lists OpenPittsburgh.Org and Mr. Pool as Plaintiffs. (*See* ECF No. 86.)

1

constitutional violations relating to Pennsylvania law's restrictions on the circulation of local referendum petitions. (*See generally* ECF No. 1.) Specifically, in the most recently amended version of Plaintiffs' Complaint, the Third Amended Complaint, Plaintiff challenged 53 Pa. C.S.A. § 2943(a) of the Pennsylvania Home Rule & Optional Plan Law ("HROP Law") to the extent it incorporates 25 P.S. § 2869 of the Pennsylvania Election Code on the issues of circulation, signing, filing, and adjudication of petitions to place a referendum question on Pittsburgh's 2016 general election ballot. (ECF No. 86 ¶ 1.) Plaintiffs challenged the constitutionality of these laws to the extent that they prohibit both unregistered Pennsylvania voters and non-Pennsylvanians from circulating referendum petitions under 53 Pa. C.S.A. § 2943(a).[2] (*Id.*)

Defendants are certain Allegheny County and Commonwealth of Pennsylvania officials: members of the Allegheny County Board of Elections and, at various points throughout the litigation, the Attorney General of the Commonwealth of Pennsylvania and the Acting Secretary of the Commonwealth of Pennsylvania.[3] All have been sued in only their official capacities.

On August 9, 2016, this Court entered a preliminary injunction enjoining Allegheny County officials[4] from invalidating referendum petitions on the basis that the circulator of the petition was neither (a) a resident of the Commonwealth of Pennsylvania nor (b) a registered

---

[2] Plaintiffs also challenged the requirement that Plaintiffs notarize each and every page of referendum petitions circulated and filed under 53 Pa. C.S.A. § 2943(a), but that issue is not relevant to the present motion. (*See* ECF No. 86 ¶1.)

[3] The initial Complaint listed: Mark Wolosik, in his official capacity as Manager of the Allegheny County Division of Elections, John P. DeFazio, in his official capacity as a Member of the Allegheny County Board of Elections, Rich Fitzgerald, in his official capacity as a Member of the Allegheny County Board of Elections, Samuel DeMarco III, in his official capacity as a Member of the Allegheny County Board of Elections, and Kathleen Kane, in her official capacity as the Attorney General of the Commonwealth of Pennsylvania. (*See* ECF No. 1, at 1–2; ECF No. 42, at 1–2.) Because Plaintiffs sought relief against Defendants in their official capacities only, the named Defendants have changed throughout this litigation. (*See* ECF No. 86.)

[4] The City of Pittsburgh is the county seat of Allegheny County. Also, the Commonwealth officials were only directed to take no action with respect to Plaintiffs' petitions and refrain from interfering with the relief granted in the Order. (ECF No. 42, at 2.)

elector of the Commonwealth of Pennsylvania. (*See* ECF No. 42.) Applying strict scrutiny, the Court concluded that Plaintiffs made a strong showing that the residency and registration requirements that had been imposed on such circulators violated the First Amendment as applied to the Plaintiffs and as to the involved ballot referendum issue. (*See id.* at 4, 6.)

On August 30, 2022, Plaintiffs filed the instant Motion (ECF No. 160) to convert that preliminary injunction into a permanent injunction and final Order of the Court, with a handful of proposed modifications as detailed below. On September 14, 2022, the Allegheny County Defendants ("County Defendants") filed their Response (ECF No. 162). Also on September 14, 2022, the Acting Secretary of the Commonwealth ("Commonwealth Defendants") filed its Response. (ECF No. 163). On October 2, 2022, Plaintiffs filed a Reply. (ECF No. 166). Thus, Plaintiffs' Motion for Permanent Injunction (ECF No. 160) is ripe for disposition.

## II.   LEGAL STANDARD

"In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

## III.   DISCUSSION

### a.   Requested Modifications & the Parties' Respective Positions

#### i.   Requested Modifications

First, Plaintiffs request that the named Defendants in the preliminary injunction be modified as collectively being enjoined as "Defendants." (ECF No. 160, at 1.) Second, Plaintiffs request that the permanent injunction specifically state that the Court retains jurisdiction over the

action to monitor Defendants' compliance with the requested permanent injunction. (*Id.* at 1–2.) Third, Plaintiffs request an Order that "Defendants shall incorporate, print and provide on each Petition a section within the Statement of Circulator for out-of-state circulators to complete and execute an affirmation consistent with the terms of" the permanent injunction. (*Id.* at 2.) Fourth, Plaintiffs proposed several stylistic changes in keeping with "various changes in the law which have occurred since the preliminary injunction was entered into force." (*Id.*) For example, what was previously termed the "Affirmation of Circulator" is now statutorily denominated as the "Statement of Circulator." (*Id.*)

### ii. County Defendants' Position

County Defendants state that they "have no interest one way or another about the substance of this litigation" because "the legal issue in this case always has been and remains the constitutionality of the form of nomination petitions mandated for use" by Pennsylvania's Election Code. (ECF No. 162 ¶¶ 1—3.) Specifically, according to County Defendants, § 2943(a) of the Commonwealth HROP Law sets forth the requirements for proposing a public referendum to amend the charter of a home rule unit of local government, of which Allegheny County is one, as is the City of Pittsburgh. (*Id.* ¶ 4.) Section 2943(a) states that the filing and adjudication of nomination petitions shall be subject to the Pennsylvania Election Code, over which County Defendants say they have no authority. (*Id.* ¶ 5–7.) Moreover, the County Defendants argue that Pennsylvania law "clearly establishes that the duties of a county board of elections under Pennsylvania Election Code are ministerial in nature and allow for no exercise of discretion regarding matters pertaining to the conduct of elections," so the "County Defendants, in their official capacities, simply implement the provisions set forth in Pennsylvania Election Code." (*Id.* ¶¶ 8–9.)

Thus, County Defendants "do not generally oppose" Plaintiffs' Motion for a permanent injunction. (*Id.* ¶ 11.) However, because in their view Pennsylvania law "exclusively vests the Secretary [of the Commonwealth] with the authority to determine the form of nomination petitions and papers . . . the County Defendants agree with the Plaintiffs that any final order in this case should also bind the Secretary." (*Id.* ¶ 13.)

However, the County Defendants do oppose particular aspects of Plaintiffs' requested relief. As to Plaintiffs' second requested modification, County Defendants oppose the inclusion of a provision in the permanent injunction ordering Defendants to incorporate a section on each petition for out-of-state circulators to complete and execute an affirmation. (*Id.* ¶ 15.) County Defendants argue that "there is no need to order [them] to do something that they have been doing for almost six years." (*Id.*)

As to Plaintiffs' third requested modification, County Defendants oppose the inclusion of a provision in the Order specifying that this Court retains jurisdiction to monitor compliance with its Orders and to resolve disputes. (*Id.* ¶ 16.) Retention of jurisdiction is unnecessary, they argue, because "no one has contended or alleged" that the 2016 preliminary injunction "has not been followed." (*Id.* ¶ 17.)

Finally, County Defendants do not comment on Plaintiffs' linguistic changes.

### iii. Commonwealth Defendant's Position

The Acting Secretary of the Commonwealth opposes the "wording of the Order as proposed by Plaintiffs and opposes it to the extent that it seeks any relief against [him]." (ECF No. 163, at 4.) Generally, the Acting Secretary argues that "the Secretary has no involvement with respect to the referendum process at issue," which—according to the Acting Secretary—is "conducted entirely pursuant to the HROP Law." (*Id.* at 2 & n.1) Specifically, the Acting Secretary

5

argues that, although Allegheny County's Home Rule Charter *does* incorporate the Election Code provisions with respect to nomination procedures, it does so entirely of its own volition. (*Id.*) There is no requirement in Pennsylvania law that Home Rule Charters incorporate Election Code provisions, and the Acting Secretary points to several counties operating under Home Rule charters which do not incorporate Election Code provisions. (*Id.*) Thus, in the Acting Secretary's view, it is not a provision of Pennsylvania Election law being challenged, but rather the Allegheny County Home Rule Charter that Allegheny County has chosen to adopt. (*Id.*)

Thus, because, in the Acting Secretary's view "[he] plays no role in the specific procedures by which Allegheny County receives and processes these petitions under the Home Rule Charter . . . the Order should clearly state that this responsibility and obligation falls on the County Defendants and their successors." (*Id.* at 4.) However, in the interest of resolving this litigation, the Acting Secretary states that he has no objection to incorporating the language from the Court's original Order directing the Acting Secretary not to take any actions as to OpenPittsburgh.org's Petitions that interfere with the relief granted by such Order. (*Id.* at 5, quoting ECF No. 42, at 3.)

The Acting Secretary further takes the position that it is not necessary for the Court to retain jurisdiction over this matter—in part in light of the Commonwealth Defendants' inability under state law to agree to a "consent decree" without the approval of the Governor and notice to the General Assembly, and in part in light of the fact that there has been no allegation that the preliminary injunction has not been obeyed. (*Id.* at 5.)

Similarly, to the extent that certain information is to be required to be printed on the petitions—a request that the Acting Secretary apparently does not oppose—the Acting Secretary takes the position that the Order "should again clearly define the County Defendants and their successors as the appropriate entity upon whom that obligation falls." (*Id.*)

6

However, the Acting Secretary does object to Plaintiffs' proposed order in that it appears to grant facial relief, not merely relief as applied to Plaintiffs. (*Id.* at 4–5.) The Acting Secretary argues that Plaintiffs are not entitled to facial relief and—to the extent they claim to be—they must litigate that issue directly. (*Id.* at 4., citing *Benezet Consulting LLC v. Sec'y Commw. Pa.*, 26 F.4th 580, 582 (3d Cir. 2022) (denying permanent injunctive relief in favor of all similarly situated individuals because this would constitute facial relief)).

b. **Propriety of the entry of a permanent injunction generally**

As the Court reads the briefs in this case, neither the County nor the Commonwealth Defendants dispute, generally speaking, that the standard for the entry of a permanent injunction has been met here. Instead, the disputed matters revolve around the specific provisions of the permanent injunction.

Nonetheless, before considering Defendants' various arguments for modifying or otherwise cabining Plaintiffs' requested relief, the Court briefly considers whether the standard for the entry of permanent injunctive relief has been met.

Actual success on the merits. To establish actual success on the merits, Plaintiffs must show that the provisions of the Pennsylvania Election Code at issue—i.e. those which, without an injunction, could be invoked to invalidate referendum petitions on the basis that the circulator of the petition was neither (a) a resident of the Commonwealth of Pennsylvania nor (b) a registered Elector of the Commonwealth of Pennsylvania—actually violate the First Amendment as applied to Plaintiffs.

The Court sees no reason—and the Defendants have provided none—to deviate from the conclusion it drew in 2016 that "the in-state residency and registration requirements of circulators

7

may not be constitutionally enforced" against Plaintiffs "as they are not necessary to fulfill a compelling state interest in the face of actual constitutional harm." (ECF No 42, at 6.)

Additionally, the Court notes that in the nearly six years since the entry of the preliminary injunction in this case, additional authority has amassed to support the view that the restrictions at issue here violate the First Amendment. *See We the People PAC v. Bellows*, 40 F.4th 1 (1st Cir. 2022) (requirement that petition circulators be residents of Maine and registered Maine voters failed strict scrutiny and violated the First Amendment) (affirming entry of preliminary injunction); *Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022) (requirement that initiative petition signature gatherers be residents of Montana failed strict scrutiny and violated the First Amendment) (reversing district court's entry of summary judgment in favor of Montana); *see also Wilmoth v. Sec'y N.J.*, 731 F. App'x 97, 102–03 (3d Cir. 2018) (collecting cases and characterizing the Courts of Appeals as reaching a "collective agreement" on the fact that strict scrutiny analysis applies to residency restrictions upon circulators of nomination petitions)).

Irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, Plaintiffs' success on the merits constitutes a showing of irreparable injury.

Harm to defendant(s). Neither the County nor the Commonwealth Defendants has argued that any harm whatsoever that will befall them if—as a general matter—this permanent injunction is granted. In fact, their positions are that such relief is of limited necessity, if necessary at all, given that they have complied for years with the Court's preliminary injunction Order. The Court would have no basis to conclude that granting the permanent injunction will result in even more harm to the Defendants than would result if the Court denied such relief.

Public interest. As the Court noted in its Opinion granting the preliminary injunction (ECF No. 42), the public has a strong interest in ensuring that referendum petitioners are not confronted with unconstitutional hurdles which impact their speech and the choices of the voting public. Though that interest must be balanced against the public's interest in the efficient regulation and processing of referendum petitions, the balancing of the public interest favors the entry of a permanent injunction against the enforcement of residency and registration requirements for circulators.

Thus, having considered the factors set forth in *Shields*, 254 F.3d at 482, the Court concludes that the entry of a permanent injunction, generally speaking, is warranted in this case. The only issue that remains to be resolved is whether the preliminary injunction will incorporate the modifications proposed by Plaintiffs, some of which are disputed by either of both Defendants.

### c. Propriety of the requested modifications

As to the propriety of the modifications to the preliminary injunction requested by Plaintiffs, the most significant issue is the first: whether the named Defendants in the preliminary injunction will be collectively enjoined as "Defendants." (ECF No. 160, at 1.) As detailed above, each Defendant objects to this modification in that they claim that they have nothing to do with the enforcement of the unconstitutional provision of Pennsylvania law. Thus, in effect, each Defendant contends that only the other ought to be enjoined. However, that matter was fully litigated at the motion to dismiss phase (*see* ECF No. 139, at 16–19) and the law of the case is that both Commonwealth and County are necessary and proper parties to this suit in that they meet the criterion set forth in *Ex Parte Young* and its progeny; both the County and Commonwealth Defendants are properly named in their official capacities because "by virtue of [their] office [they] have some connection with the enforcement of the act." *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d

Cir. 1980) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). Again, that matter was fully litigated at the motion to dismiss stage, and the Court will not rehash that analysis here, as it concludes that its Order in such regards was and is correct. Thus, the permanent injunction shall enjoin Defendants collectively.

Second, as to Plaintiffs' request that the permanent injunction specify that this Court retains jurisdiction over the action to monitor Defendants' compliance with the permanent injunction (ECF No. 160, at 2), the Court notes that—though the inclusion of such a provision is common— it is also superfluous. Under the All Writs Act, district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). This includes the power to enforce its injunctions and preserve the integrity of its prior orders. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 923 F.3d 96, 109 (3d Cir. 2019). Nowhere in the All Writs Act, nor in the case law cited by the parties or discovered by the Court, does it say that in order to exercise the authority conferred by the All Writs Act the Court must first specify that it retains enforcement jurisdiction. Nonetheless, because the Court in effect retains such jurisdiction in any event, the Court will make that reality explicit in the permanent injunction Order.

Third, as to Plaintiffs' request that the permanent injunction require "Defendants [to] incorporate, print and provide on each Petition a section within the Statement of Circulator for out-of-state circulators to complete and execute an affirmation consistent with the terms of" the permanent injunction (ECF No. 160, at 2), the Court notes that Commonwealth Defendants have apparently not objected to this request and indeed have left this provision in their proposed Order, though their version of the proposed Order specifies that the obligation to satisfy this condition falls on the County Defendants and their successors (*see* ECF No. 163-1 ¶ 2). Given that all that

10

this provision does is provide a specific manner in which Defendants are to comply with the terms of the Court's Order, the Court will include it in the permanent injunction.

Finally, as to the proposed stylistic changes aimed at keeping the permanent injunction consistent with "changes in the law which have occurred since the preliminary injunction was entered into force" (ECF No. 160, at 2), the Court notes that neither Defendant has disputed the accuracy or propriety of Plaintiffs' proposed changes, and in the Court's estimation, the Changes appear to be only stylistic in nature. Thus, the Court will enter a permanent injunction Order that incorporates the stylistic changes suggested by Plaintiffs.

### d. Facial vs. as-applied relief

The Commonwealth Defendants correctly note that the terms of Plaintiffs' proposed Order—like the Third Amended Complaint (*see* ECF No. 86, at 22, 26, 30)—seeks facial relief. That is, if the Order were entered as proposed, neither the Commonwealth nor County Defendants could enforce the provisions of 25 P.S. § 2869 to invalidate—on the grounds that the Petition's circulator is (1) not a resident of the Commonwealth of Pennsylvania or (2) not a registered Elector of the Commonwealth of Pennsylvania—*any* referendum petitions filed anywhere in Pennsylvania at any time by anyone pursuant to 53 Pa. C.S.A. § 2943(a) of the HROP Law. (*See* ECF No. 160-1, at 2.)

The Court will not go so far as to declare that 25 P.S. § 2869 can *never* be enforced to invalidate referendum petitions filed pursuant 53 Pa. C.S.A. § 2943(a) of the HROP Law. Whether such relief would require additional litigation under *Benezet* is not entirely clear; *Benezet* declined to extend injunctive relief to "all similarly situated individuals" as the plaintiffs in that case because the principles of *Doe v. Reed*, 561 U.S. 186 (2010) "requir[e] as-applied relief to be limited to the specific plaintiffs and circumstances of the litigation." 26 F.4th at 586. However, the *Benezet* Court

11

also noted that "there may be instances where a court can exercise its power to broaden the scope of as-applied relief if the constitutional attack reveals that a law is invalid 'across the board.'" *Id.* at 585 (citing *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2297 (2016); *Citizens United v. FEC*, 558 U.S. 310 (2010)).  Critically, in *Benezet*, the plaintiffs had stipulated at oral argument at the Court of Appeals that any relief should be limited only to the named plaintiffs in that case. *Id.* at 585.

This Court declines to declare the invocation of 25 P.S. § 2869 to invalidate, on the grounds of the circulator's residency or voter registration status, referendum petitions filed pursuant to 53 Pa. C.S.A. § 2943(a) of the HROP Law to be facially unconstitutional. That is not the issue that has been litigated in this case and was not the relief entered by this Court's preliminary injunction Order. That is, the Court expresses no opinion on whether Defendants can ever constitutionally rely on § 2869 to invalidate, on the grounds of the circulator's residency or voter registration status, a referendum petition filed pursuant to the HROP Law. *See id.* at 585 ("[A] facial challenge indicates that the statute may rarely or never be constitutionally applied.").

However, the Court concludes that—as to referendum petitions as to whom any non-Pennsylvania circulators unconditionally and irrevocably submit to the personal jurisdiction and venue of the Commonwealth of Pennsylvania, which are circulated within Allegheny County, and which pertain to the inclusion of a referendum question under a HROP Law and on ballots within Allegheny County for elections administered by the County Defendants—P.S. § 2869 cannot be enforced to invalidate such referendum petitions consistent with the First Amendment. That is the relief actually extended in the preliminary injunction Order of this Court and, consistent with *Benezet*, is the issue and the relief actually litigated by these parties in this case, no narrower and no broader. The scope of the permanent injunction will therefore be so limited.

## IV. CONCLUSION

For the reasons and on the terms set forth above, the Court GRANTS Plaintiffs' Motion for a Permanent Injunction (ECF No. 160.)

An appropriate Order on the terms set out in this Opinion will issue.

s/ Mark R. Hornak  
Mark R. Hornak  
Chief United States District Judge

Dated: March 8, 2023